**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Duane BEDFORD, Appellant.**

Superior Court of Pennsylvania.

Argued March 21, 2012.

Filed May 31, 2012.

---

Lee Mandell, Philadelphia, for appellant.

Jennifer O. Andress, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., BOWES, J., GANTMAN, J., PANELLA, J., SHOGAN, J., ALLEN, J., LAZARUS, J., MUNDY, J., and WECHT, J.

OPINION BY GANTMAN, J.:

Appellant, Duane Bedford, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for first-degree murder and possession of an instrument of a crime ("PIC").[1] Appellant presents several questions for our review, composed of challenges to the sufficiency of the evidence, the court's decision to deny a mistrial, the admission of character evidence, and alleged prosecutorial misconduct. We hold: (1) evidence showing that Appellant shot Sam Brown ("Victim") in the head at close range sufficiently established Appellant acted with specific intent to kill; (2) Appellant was not entitled to a mistrial based on purported hearsay testimony because the statements did not unduly prejudice him; (3) Appellant waived his evidentiary issue by failing to preserve it at trial; and (4) Appellant's numerous assertions of prosecutorial misconduct are unpersuasive because none of the alleged instances resulted in undue prejudice to Appellant's fair trial rights. Accordingly, we affirm.

The relevant facts and procedural history of this case are as follows. Sam Brown knew Appellant, as both men lived on the same block in Southwest Philadelphia, and hired Appellant sometime in 2005 for a construction job. Appellant did some of the work and Victim paid some of the money owed, but a dispute arose before

---

1. 18 Pa.C.S.A. §§ 2502(a), 907(a), respectively.

the job was completed. The total amount at issue was $900.00, and Victim refused to pay it. The two men just avoided each other for a time, but the conflict resurfaced on May 26, 2006, when Victim discovered the windows of his car had been smashed. Victim suspected Appellant and, two days later, went to the home of Frances Quitman to confront Appellant. When asked about the car, Appellant told Victim, "I'll talk to you outside about it." As the two men walked to the front porch, Appellant reached out to grab Victim, who shoved Appellant away. Moments later, Appellant pulled a handgun from his waistband and shot Victim three times.

Victim was transported to the Hospital of the University of Pennsylvania and died there approximately one hour after the shooting. Appellant fled the scene and the Philadelphia area entirely. Police eventually located and captured Appellant in York, PA, after a year-long search that featured a profile of Appellant on the television show America's Most Wanted. Appellant had changed his appearance and was living in York under a new name and with a new family.[2]

Following his capture in York, police charged Appellant with first-degree murder, PIC, and numerous other offenses. The case proceeded to a jury trial, where Appellant claimed self-defense and attempted to paint Victim as the aggressor. Specifically, Appellant stated he opened fire because Victim was beating him from behind with a metallic object, which Appellant believed was a weapon. In rebuttal, the Commonwealth called Police Sergeant Sean Butts, a longtime friend of Victim, who testified to Victim's peaceable nature. Defense counsel objected to this testimony solely on the grounds of relevance. The court overruled the objection and permitted Sgt. Butts to testify. The jury found Appellant guilty of first-degree murder and PIC. The court sentenced Appellant to life imprisonment on the murder charge and a concurrent sentence of two and a half to five years' imprisonment for PIC.

Appellant timely appealed and a three-judge panel of this Court vacated and remanded for a new trial on the ground that the court erred when it allowed Sgt. Butts to give "character evidence not in the form of reputation testimony." The panel further concluded the error was not harmless, primarily because Appellant raised self-defense, making Victim's reputation for peacefulness a critical issue. The Commonwealth sought *en banc* reconsideration, which this Court granted on October 20, 2011.

Appellant raises five issues for our review:

IS APPELLANT ENTITLED TO AN ARREST OF JUDGMENT ON ALL CHARGES WHERE THE EVIDENCE, AS HERE, IS NOT SUFFICIENT TO SUSTAIN THE VERDICT?

IS APPELLANT ENTITLED TO A NEW TRIAL AS THE RESULT OF COURT ERROR WHERE THE COURT PERMITTED BLATANT HEARSAY WHICH ESTABLISHED THAT SOMEONE IN THE NEIGHBORHOOD HAD SAID THAT APPELLANT SHOT AND KILLED VICTIM?

IS APPELLANT ENTITLED TO A NEW TRIAL AS THE RESULT OF COURT ERROR WHICH PERMITTED SERGEANT BUTTS TO OFFER EVIDENCE OF GOOD CHARACTER OF [VICTIM] WHERE SAME WAS

---

**2.** Appellant had taken the name "Craig Wallace" and was found with two other pieces of false identification in the names of "Karl W. Golden" and "Police Sergeant Kirk D. James."

IMPROPER AND WAS OFFERED IMPROPERLY THROUGH THE FORM OF PERSONAL OPINION?

SHOULD APPELLANT BE AWARDED A NEW TRIAL AS THE RESULT OF PROSECUTORIAL MISCONDUCT DURING THE COURSE OF TRIAL, AND WHERE THE PROSECUTOR REFERRED TO EVIDENCE NOT OF RECORD, REFERRED TO HEARSAY, AND ASKED A PARTICULAR QUESTION ONLY TO UNFAIRLY PREJUDICE THE JURY?

SHOULD APPELLANT BE AWARDED A NEW TRIAL AS THE RESULT OF PROSECUTORIAL MISCONDUCT (A) DURING CROSS–EXAMINATION OF APPELLANT; (B) DURING CLOSING ARGUMENT WHERE THE PROSECUTOR ALLUDED TO EVIDENCE NOT PRESENTED; AND (C) WHERE THE PROSECUTOR BRANDED APPELLANT A LIAR?

(Appellant's Brief at 3).

■ Appellant first argues there was insufficient evidence to support his conviction for first-degree murder. Specifically, Appellant contends the Commonwealth failed to prove he acted with specific intent to kill, mostly due to Appellant's belief that Victim was the aggressor and came looking for Appellant "with hardness of heart." Appellant claims the Commonwealth's evidence was entirely lacking on this element, and without his own decision to testify in self-defense, there would have been no evidence that Appellant even shot Victim. Appellant concedes the jury was free to disbelieve his version of events, but he reasons the jury cannot find him guilty solely because they disbelieved him. According to Appellant, he should receive a new trial because the jury convicted him for an impermissible reason. We disagree.

■ When reviewing a challenge to the sufficiency of the evidence, we must regard all the evidence in the light most favorable to the verdict winner, giving that party the benefit of all reasonable inferences. *Commonwealth v. Torres*, 564 Pa. 219, 223, 766 A.2d 342, 344 (2001). Additionally, an appellate court does not weigh the evidence or substitute its judgment for that of the fact-finder. *Commonwealth v. Flamer*, 848 A.2d 951, 953 (Pa.Super.2004), *appeal denied*, 580 Pa. 711, 862 A.2d 1253 (2004). A person is guilty of first-degree murder where the Commonwealth proves that (1) a human being was unlawfully killed; (2) the person accused is responsible for the killing; and (3) the accused acted with specific intent to kill. 18 Pa.C.S.A. § 2502(a), (d); *Commonwealth v. DeJesus*, 580 Pa. 303, 308, 860 A.2d 102, 105–06 (2004). An intentional killing is a "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S.A. § 2502(d). Specific intent to kill can be inferred from the use of a deadly weapon on a vital part of the victim's body. *DeJesus, supra* at 308, 860 A.2d at 106.

In the present case, the jury heard testimony that Appellant and Victim were involved in a dispute over $900.00 and the broken windows in Victim's car. Victim went to confront Appellant at the home of Frances Quitman. Appellant was drinking there, using cocaine, and carrying a .38 caliber handgun. Appellant had boasted earlier in the evening that he "always be packing" and "jokingly" threatened to shoot Andre Johnson, a friend of Ms. Quitman. When Victim arrived, Appellant invited him outside to discuss the broken car windows. Shortly after both men left the house, witnesses inside heard gunfire and ran to the front porch, where they saw Victim bloodied with bullet wounds to his face and leg. Appellant claimed his actions were justified because Victim began

to beat Appellant from behind with a metal object that Appellant thought was a gun. Appellant then pulled out his handgun and, in his words, "let go three quick rounds," two of which struck Victim and killed him. Police responding to the scene did not find a weapon, or any metal object that could have been used as a weapon, on or near Victim's body.

On this record, a reasonable jury could conclude Appellant committed first-degree murder. Appellant possessed a gun on the night of the shooting and joked about using it. He also admitted in his trial testimony that he argued with Victim and fired three shots at Victim at close range. One shot struck Victim in the head and caused his death. These facts, viewed in the light most favorable to the Commonwealth, were sufficient to establish Appellant acted with specific intent to kill.[3] *See Commonwealth v. Pagan,* 597 Pa. 69, 84, 950 A.2d 270, 279 (2008), *cert. denied,* 555 U.S. 1198, 129 S.Ct. 1378, 173 L.Ed.2d 633 (2009) (holding evidence showed defendant acted with specific intent to kill where he shot his victim in head, which is vital part of human body). Appellant presented a claim of self-defense at trial, but the jury evaluated his credibility as a witness and rejected his justification defense.[4] Appellant's assertion, that if his testimony had been believed, the jury would have acquitted him, is actually a challenge to the weight of the evidence, not its sufficiency; and we decline Appellant's invitation to reweigh the evidence on appeal. Here, the Commonwealth presented sufficient evidence in this case to prove first-degree murder. Although Appellant seeks to relitigate the jury's credibility findings on his self-defense claim, his attempts are unsuccessful.

■ In his second issue, Appellant claims the trial court should have declared a mistrial based on certain hearsay testimony from a Commonwealth witness. The testimony at issue came from Jenine Jones, who testified that Frances Quitman told her, "[Appellant] just shot [Victim] and killed him." In Appellant's view, this testimony was crucial to the Commonwealth's case because it tended to prove Appellant shot Victim without provocation. Appellant acknowledges the court sustained his timely objection to this testimony and promptly issued a cautionary instruction to the jury. Appellant further concedes that he took the stand and admitted shooting Victim, albeit in self-defense. Nevertheless, Appellant concludes Ms. Jones' testimony was so prejudicial as to require a mistrial because the jury could have used it to disbelieve Appellant's claim that Victim was the aggressor. We disagree.

■ We review the trial court's decision to deny a mistrial for an abuse of discretion. *Commonwealth v. Boone,* 862 A.2d 639, 646 (Pa.Super.2004). A mistrial is necessary only when "the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by

**3.** Appellant makes no sufficiency argument with respect to his PIC conviction, other than to say he is entitled to an arrest of judgment on PIC because "[Appellant] did not commit a murder, and his gun could not then be considered to have been an instrument of that crime." (*See* Appellant's Brief, at 14.) Given the conclusory nature of his argument on this point, we decline to address it in any detail, other than to reiterate our holding that the evidence was sufficient to sustain Appellant's murder conviction.

**4.** All witnesses inside Ms. Quitman's home testified they heard gunshots from the porch moments after Appellant and Victim took their argument outside. On the porch, witnesses saw Victim shot through the face and leg.

preventing the jury from weighing and rendering a true verdict." *Commonwealth v. Parker,* 957 A.2d 311, 319 (Pa.Super.2008), *appeal denied,* 600 Pa. 755, 966 A.2d 571 (2009). A mistrial is inappropriate where cautionary instructions are sufficient to overcome any potential prejudice. *Id.*

In the present case, Jenine Jones testified that she heard a scream at Frances Quitman's house and ran to investigate. Ms. Jones reached Ms. Quitman's porch and saw Victim, whom she described as "shot up . . . foaming, shaking, from the mouth." (*See* N.T. Trial, 8/18/08, at 148.) Ms. Jones attempted to console Victim's wife and call the police. When she asked Ms. Quitman what had happened, Ms. Quitman replied, "[Appellant] just shot him and killed him." *Id.* At that point in the testimony, Appellant objected; the court sustained his objection and immediately instructed the jury to "disregard anything that the witness said that someone else said." *Id.*

■ Appellant's bald claims of prejudice do not afford him relief. The court not only sustained Appellant's objection to Ms. Jones' hearsay testimony, the court also unequivocally told the jury to disregard it. We can presume the jury followed the court's instructions and Appellant is unable to show otherwise. *See Commonwealth v. Mollett,* 5 A.3d 291 (Pa.Super.2010), *appeal denied,* 609 Pa. 686, 14 A.3d 826 (2011) (stating jury is presumed to follow court's instructions).

Appellant's assertions of gross prejudice are also misguided, given his own admissions at trial. Both Appellant and Ms. Jones stated Appellant shot and killed Victim—Appellant asserted he did so in self-defense, while Ms. Jones was merely silent on that point. Appellant draws a straight line from Ms. Jones' silence to prejudice and treats Ms. Jones' testimony as the sole

cause of his guilty verdict. Our review shows otherwise. Ms. Jones' testimony left open the central issue of Appellant's defense—provocation—and allowed the jury to reach its own conclusion based on the totality of the evidence presented, including the credibility of all witnesses. The verdict shows the jury resolved the justification issue against Appellant, and his current attempt to pin his conviction solely on a single piece of testimony, which the court instructed the jury to disregard, is entirely without support. For these reasons, Appellant's second issue fails.

■ In Appellant's third issue, he objects to the **form** of character testimony offered by Sgt. Sean Butts, a Philadelphia Police Officer and longtime friend of Victim. Appellant believes Sgt. Butts' testimony was improper because he expressed his **opinion** regarding Victim's character for peacefulness. Appellant states the Pennsylvania Rules of Evidence permit character testimony only in the form of **reputation,** rendering Sgt. Butts' opinion testimony inadmissible under the applicable rules. Appellant concludes the court's error in overruling his objection and permitting Sgt. Butts' testimony was so significant that it requires a new trial. We disagree.

■ As an initial matter, "A party complaining, on appeal, of the admission of evidence in the court below will be confined to the specific objection there made." *Commonwealth v. Cousar,* 593 Pa. 204, 231, 928 A.2d 1025, 1041 (2007), *cert. denied,* 553 U.S. 1035, 128 S.Ct. 2429, 171 L.Ed.2d 235 (2008). If counsel states the grounds for an objection, then all other unspecified grounds are waived and cannot be raised for the first time on appeal. *Commonwealth v. Arroyo,* 555 Pa. 125, 142, 723 A.2d 162, 170 (1999); *Commonwealth v. Stoltzfus,* 462 Pa. 43, 60, 337 A.2d

873, 881 (1975) (stating: "It has long been the rule in this jurisdiction that if the ground upon which an objection is based is specifically stated, all other reasons for its exclusion are waived, and may not be raised post-trial"); *Commonwealth v. Duffy*, 832 A.2d 1132, 1136 (Pa.Super.2003), *appeal denied*, 577 Pa. 694, 845 A.2d 816 (2004) (stating party must make timely and **specific** objection to preserve issue for appellate review).

Instantly, the Commonwealth offered Sgt. Butts as a rebuttal witness, and the court allowed for an offer of proof. The following exchange occurred:

[THE COMMONWEALTH]: Sergeant [Sean] Butts [whom] I indicated to counsel before for purposes of discovery that he knew [Victim] personally for 13 years, and he would just testify that he had never known [Victim] to be a violent person, never to carry a weapon, never to be physical, and that's it.

[DEFENSE COUNSEL]: I would object to it. I don't think it's relevant. If you want me to expand on his prior history in terms of whether he was a nice guy or a peaceful person, I don't think it's of [any] moment at this point. We're dealing with what happened on that particular day.

[THE COMMONWEALTH]: [Appellant] has put it at issue by making a claim that he was violent and overly aggressive or physical. It's simply to rebut that.

[THE COURT]: Response[?]

[DEFENSE COUNSEL]: Again, I believe it's of no moment as to his prior history. There's no evidence in this record to indicate that [Victim] had any violent propensities in the past. All we're talking about is that particular day at that particular time. That's what [Appellant] testified to, that he was assaulted at that time. Whether this man may have never assaulted anybody in his life before or was a peaceful person, never carried a gun, I don't believe is relevant to the issues ... which is what happened on that moment, on that date.

[THE COURT]: We'll allow it and just address it with the appropriate point for charge if you feel it necessary. The [c]ourt has determined [Victim's] character was brought into issue during the course of the trial, specifically in [Appellant's] case.

\*　　\*　　\*

[THE COMMONWEALTH]: Do you know [Victim]?

[SGT. BUTTS]: Yes, I do.

[THE COMMONWEALTH]: How do you know [Victim]?

[SGT. BUTTS]: [Victim] was a worker at Mimmo's, 60th and Walnut. [We] were friends and we also played chess together.

[THE COMMONWEALTH]: How long have you been friends with [Victim]?

[SGT. BUTTS]: Till his death.

[THE COMMONWEALTH]: Were you present on the scene at 5500 Pentridge on the night of May 28th?

[SGT. BUTTS]: Yes, I was.

[THE COMMONWEALTH]: Did you render assistance to [Victim] that night?

[SGT. BUTTS]: Yes, I did.

[THE COMMONWEALTH]: When did you realize that [Victim], your friend, was the victim?

[SGT. BUTTS]: After officers came back from the hospital and told me his name and I asked to see his driver's license, and they showed me the driver's license, and I realized it was [Victim].

[THE COMMONWEALTH]: Otherwise, did you recognize him from the scene?

[SGT. BUTTS]: No.

[THE COMMONWEALTH]: Do you know [Victim] to be a violent individual?

[SGT. BUTTS]: No.

[THE COMMONWEALTH]: [Why] do you say "no"?

[SGT. BUTTS]: [Victim] was a very soft-spoken, meek person, very subdued. Never really raised his voice around me or in public. There have been some instances at his employment where he could have gotten upset or violent, but he didn't.

[THE COMMONWEALTH]: Have you ever known [Victim] to engage in any physical altercations?

[SGT. BUTTS]: No.

[THE COMMONWEALTH]: Did you ever know [Victim] to carry a weapon?

[SGT. BUTTS]: No.

\* \* \*

[DEFENSE COUNSEL]: If I understand you correctly, let me ask you this, you didn't live with [Victim], did you?

[SGT. BUTTS]: No.

[DEFENSE COUNSEL]: He was a big man, wasn't he?

[SGT. BUTTS]: Yes.

[DEFENSE COUNSEL]: That's all I have.

\* \* \*

(*See* N.T. Trial, 8/21/08, at 4–10.) As the transcript makes clear, counsel objected to Sgt. Butts' testimony solely on the basis of relevance. (*See id.* at 4.) Counsel did not object to the **form** of the evidence at trial and raises for the first time on appeal his challenge to Sgt. Butts' testimony as "improper character evidence" under the applicable rules of evidence. Because counsel made a specific objection to Sgt. Butts' testimony at trial on the ground of relevance, any objection to the **form** of the evidence was waived. *See Cousar, supra; Arroyo, supra.*

Appellant's fourth and fifth issues complain of prosecutorial misconduct and encompass three specific instances: (1) the Commonwealth's cross-examination of defense witness Ebony Byrd; (2) the Commonwealth's cross-examination of Appellant; and (3) the Commonwealth's closing argument. Appellant asserts the Commonwealth improperly elicited statements from Ms. Ebony which revealed Appellant's imprisonment. Appellant further maintains certain aspects of his cross-examination by the Commonwealth were inappropriate because the Commonwealth disparaged defense counsel and referred to facts not in evidence. Additionally, Appellant argues the Commonwealth committed misconduct during closing argument by engaging in speculative hypothetical twists on the facts. Appellant rejects the Commonwealth's premise that each instance of questioning was appropriate in context and did not impair Appellant's right to a fair trial. Instead, Appellant claims the Commonwealth's actions were improper, crossed the line, and like a "locomotive, drove straight through our concepts of 'fair trial' and due process." (*See* Appellant's Brief at 20.) Appellant concludes such abuse entitles him to a new trial. We disagree.

"Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion." *Commonwealth v. Solomon,* 25 A.3d 380, 383 (Pa.Super.2011), *appeal denied,* —— Pa. ——, 40 A.3d 1236 (2012). "In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one." *Id.* Not every inappropriate remark by a prosecutor constitutes reversible error. *Commonwealth v. Harris,* 884 A.2d 920, 927 (Pa.Super.2005), *appeal denied,* 593 Pa. 726, 928 A.2d 1289 (2007). A prosecutor's statements to a jury do not occur in a

vacuum, and we must view them in context. *Solomon, supra* at 383. Even if the prosecutor's arguments are improper, they generally will not form the basis for a new trial unless the comments unavoidably prejudiced the jury and prevented a true verdict. *Commonwealth v. Rolan,* 964 A.2d 398, 410 (Pa.Super.2008).

■ Instantly, Ms. Ebony testified at trial that she had lost contact with Appellant and was unaware until recently of Appellant's alleged involvement in Victim's death. When asked where she thought Appellant was following Victim's death, Ms. Ebony said she knew only that Appellant was "away." The prosecutor asked for her to clarify, and Ms. Ebony said "away" meant "incarcerated." Upon further questioning, Ms. Ebony indicated she meant Appellant was incarcerated "for allegedly killing somebody." In context, the Commonwealth's questions were proper because Appellant had fled Philadelphia after the shooting and lived in York for more than a year under a false name. It was therefore reasonable for the prosecutor to follow up on Ms. Ebony's use of the vague and ambiguous term "away." Once she indicated "away" meant "incarcerated," the Commonwealth had her explain she was referring to Appellant's arrest for the instant homicide. As soon as Ms. Ebony clarified that the term "away" meant Appellant's current homicide arrest, the prosecutor ensured the jury would not presume Appellant had been arrested on some other, unrelated crime. *See Commonwealth v. Johnson,* 576 Pa. 23, 52, 838 A.2d 663, 680 (2003), *cert. denied,* 543 U.S. 1008, 125 S.Ct. 617, 160 L.Ed.2d 471 (2004) (stating: "[A]lthough generally no reference may be made at trial in a criminal case to a defendant's arrest or incarceration for a previous crime, there is no rule in Pennsylvania which prohibits reference to a defendant's incarceration awaiting trial or arrest for the crimes charged").

■ Likewise, Appellant is unable to prove the prosecutor committed reversible misconduct during its cross-examination of Appellant. The Commonwealth asked Appellant how he knew "Karl W. Golden," a man whose identification Appellant was carrying when arrested. Appellant apparently hesitated and looked toward counsel, prompting the prosecutor to comment, "[Counsel] doesn't have the answer for you." (*See* N.T. Trial, 8/20/08, at 165.) In making this remark, the prosecutor was calling the jury's attention to Appellant's shaky demeanor and illustrating her point that Appellant himself was at a loss for words. The comment fell within the rhetorical latitude afforded to both parties and did not lead to an unfair trial. *See Commonwealth v. Holley,* 945 A.2d 241, 252 (Pa.Super.2008), *appeal denied,* 598 Pa. 787, 959 A.2d 928 (2008) (observing prosecutor's sarcastic remark, "I'm not sure who the insane one is here, [defense counsel] or his client" was not specific attack on defense counsel or impermissible comment on defendant's innocence, but was fair response to defense counsel's accusations of government conspiracy and did not so prejudice jury as to warrant new trial); *Commonwealth v. Faulkner,* 528 Pa. 57, 77, 595 A.2d 28, 39 (1991), *cert. denied,* 503 U.S. 989, 112 S.Ct. 1680, 118 L.Ed.2d 397 (1992) (concluding trial court acted within its discretion when it denied defendant's motion for a mistrial based on prosecutor's comment that defense counsel was "stupid"). Importantly, defense counsel objected to this remark, and the court sustained the objection. Assuming the comment was somehow offensive, Appellant failed to show undue prejudice as a result.

■ In a similar fashion, a critical aspect of Appellant's self-defense case was

his claim that Victim had beaten Appellant with a weapon-shaped object. The Commonwealth challenged this assertion with questions to reveal Appellant had actually received his injuries from a bar fight shortly after the shooting, not from an assault by Victim. Despite Appellant's grandiose claims that the Commonwealth was referring to facts not in evidence (here, the bar fight), the prosecutor's remarks in context constituted part of the Commonwealth's central theme that Appellant was being selective in his recollection of the facts. This line of questioning did not warrant the extraordinary remedy of a mistrial, especially in light of defense counsel's objection to the question and the court's decision to sustain the objection. Thus, Appellant cannot show undue prejudice in this regard.

■ Appellant's last assertion of misconduct pertains to statements the Commonwealth made during closing argument and must share the same unsuccessful fate as Appellant's prior allegations. In its closing, the Commonwealth highlighted certain inconsistencies in Appellant's version of events and stated, "Had [Jenine Jones] encountered [Appellant] bloody, battered, beaten, bruised, she would have told you something to that effect." (*See* N.T. Trial, 8/21/08, at 58.) The trial court concluded the Commonwealth's statements were "merely an attack on Appellant's credibility, which the prosecutor is entitled to do during a criminal trial." (*See* Trial Court Opinion, dated April 14, 2009, at 10.) We are inclined to agree. Appellant's bold claims about the prosecutor's disregard for her duties as an officer of the court are entirely belied by the record. Moreover, the record shows defense counsel objected to the statement; and the court sustained the objection. Therefore, even if the prosecutor's comments had the due process

implications suggested, Appellant cannot show undue prejudice.

Based on the foregoing, we hold: (1) evidence showing that Appellant shot Victim in the head at close range sufficiently established Appellant acted with specific intent to kill; (2) Appellant was not entitled to a mistrial based on purported hearsay testimony because the statements did not unduly prejudice him; (3) Appellant waived his evidentiary issue by failing to preserve it at trial; and (4) Appellant's numerous assertions of prosecutorial misconduct are unpersuasive because none of the alleged instances resulted in undue prejudice to Appellant's fair trial rights. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge BOWES Files a Concurring Opinion.

Judge WECHT Joins the Majority and Concurring Opinion by Judge BOWES.

## CONCURRING OPINION BY BOWES, J.:

I join in full with the learned majority's resolution of each of Appellant's claims. I add that good character reputation evidence of the victim could have been properly introduced in this matter because Appellant's asserted defense was that the victim attacked him first. Specifically, Pa. R.E. 404(a)(2)(ii) states, "In a homicide case, where the accused has offered evidence that the deceased was the first aggressor, evidence of a character trait of the deceased for peacefulness is admissible when offered by the prosecution to rebut the same." Hence, the trial court did not err in allowing the Commonwealth to elicit character evidence to rebut Appellant's claim that the deceased assaulted him first. However, in contrast to the federal system, the testimony should have

been limited to reputation evidence. Rule 405 governs the type of evidence that may be used to prove character. That rule reads:

> (a) **Reputation evidence.** In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation. On cross-examination of the reputation witness, inquiry is allowable into specific instances of conduct probative of the character trait in question, except that in criminal cases inquiry into allegations of other criminal misconduct of the accused not resulting in conviction is not permissible.
>
> (b) **Specific instances of conduct.** Specific instances of conduct are not admissible to prove character or a trait of character, except as follows:
>
> (1) In civil cases where character or a trait of character is admissible as an element of a claim or defense, character may be proved by specific instances of conduct.
>
> (2) In criminal cases where character or a trait of character is admissible under Pa.R.E. 404(a)(2), the accused may prove the complainant's character or trait of character by specific instances of conduct.

Pa.R.E. 405. Unlike federal law, the Pennsylvania rules of evidence do not, and our previous common law evidentiary rules did not, permit personal opinion evidence to establish character. *See* Comment to Pa.R.E. 405 citing *Commonwealth v. Lopinson*, 427 Pa. 284, 234 A.2d 552 (1967), *vacated by Lopinson v. Pennsylvania*, 392 U.S. 647, 88 S.Ct. 2277, 20 L.Ed.2d 1344 (1968).

Opinion evidence is "[a] witness's belief, thought, or inference, about a disputed fact." Black's Law Dictionary (7th Edition 1999). In contrast, reputation evidence is "[e]vidence of what one is *thought by others to be.*" *Id.* (emphasis added). Accordingly, there is a fine distinction between reputation evidence and opinion evidence. The comment to Fed.R.Evid. 405 highlights that often reputation evidence is merely opinion evidence in disguise. The pertinent federal comment states:

> In recognizing opinion as a means of proving character, the rule departs from usual contemporary practice in favor of that of an earlier day. See 7 Wigmore § 1986, pointing out that the earlier practice permitted opinion and arguing strongly for evidence based on personal knowledge and belief as contrasted with "the secondhand, irresponsible product of multiplied guesses and gossip which we term 'reputation'." It seems likely that the persistence of reputation evidence is due to its largely being opinion in disguise.

Comment to Fed.R.Evid. 405. Nonetheless, any reliance on federal law in presenting opinion character evidence is misplaced. *See* F.R.Evid. 405(a).[1] Further, based on recent case law discussing admission of defense character testimony, this Court has employed a strict construction of what constitutes character testimony. In *Commonwealth v. Johnson*, 27 A.3d 244, 249 (Pa.Super.2011), the following testimony was taken:

> *opinion.* On cross-examination of the character witness, the court may allow an inquiry into relevant specific instances of the person's conduct.
>
> Fed.R.Evid. 405(a) (emphasis added).

---

1. Federal Rule of Evidence 405(a) provides:
   (a) **By Reputation or Opinion.** When evidence of a person's character or character trait is admissible, it may be proved by testimony about the person's reputation *or by testimony in the form of an*

[PCRA Counsel]: [Y]ou say that you know … [Appellant] has a reputation of being innocent of unlawful sexual intercourse?

[Ms. Yeager]: Yes.

[PCRA Counsel]: What do you mean by that?

[Ms. Yeager]: I just—I mean that he has never done anything to any child or any person that would not be—to harm them or hurt them in any sort of way.

. . . .

[PCRA Counsel]: Now, what do you mean by having a reputation in the community of being innocent of this crime?

[Ms. Yeager]: He's a well-liked man, so I believe that he's innocent as far as in the community and …

PCRA Hearing, 10/19/09, at 10–11.

. . . .

[PCRA Counsel]: Now, you've signed an affidavit saying that you know that [Appellant] has established a reputation in the community as being innocent of unlawful sexual intercourse?

[Mr. Johnson]: Yes.

[PCRA Counsel]: Can you explain what you mean by that?

[Mr. Johnson]: That he's been around my children and grandchildren and never has anything happened between him and a child.

. . . .

[PCRA Counsel]: We're talking about his reputation. Have you heard from people in the community about [Appellant's] reputation?

[Mr. Johnson]: Yes.

. . . .

[PCRA Counsel]: And what is that reputation?

[Mr. Johnson]: That he's an upstanding man.

*Johnson, supra,* at 249.

The majority therein found that this testimony was not reputation evidence because the witnesses "did not specifically comment on [the defendant's] reputation for chastity in the community." *Id.* Thus, it appears that this Court's position on reputation testimony requires the questioner or the witness to explicitly state that a person has or had a reputation in the community for being whatever the pertinent character trait may be.

Herein, the witness testified as follows:

Q: Do you know Sam Brown [the victim] to be a violent individual?

A: No.

Q: Why do you say "no"?

A: Sam was a very soft-spoken, meek person, very subdued. Never really raised his voice around me or in public. There could have been some instances at his employment where he could have gotten upset or violent, but he didn't.

Q: Have you ever known Sam to engage in any physical altercations?

A: No.

Q: Did you ever know Sam to carry a weapon?

A: No.

N.T., 8/21/08, at 9. Based on *Johnson,* this evidence falls far short of proper reputation testimony. Further, unlike *Johnson,* the witness in the instant case did not even purport to testify about the victim's reputation for peacefulness in the community. *Compare Commonwealth v. Tran,* 307 Pa.Super. 489, 453 A.2d 993 (1982). Notwithstanding the legal insufficiencies of the witness's testimony, Appellant did not lodge any objection. Rather, as the majority accurately notes, Appellant's sole objection, which was made prior to the Com-

monwealth's presentation of Sergeant Butts, was to relevance.

The transcript of the trial reveals that Appellant had multiple opportunities to set forth the character evidence objection he now makes on appeal. Specifically, Appellant could have objected when the Commonwealth inartfully posed its questions and Sergeant Butts offered purely personal opinion testimony instead of reputation evidence. Counsel, however, did not object to the form of that testimony or the form of the questions eliciting the evidence. Therefore, I agree that Appellant's sole objection to the Commonwealth's calling of the witness, before the prosecutor even posed a question regarding the prior history of the victim, was plainly insufficient to preserve his contention on appeal.