J-S32015-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LOUIS HENRY BRANCH | : | |
| | : | |
| Appellant | : | No. 1101 EDA 2019 |

Appeal from the Judgment of Sentence Entered March 22, 2019
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0008466-2015

BEFORE:     KUNSELMAN, J., KING, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:                          **FILED:  JUNE 4, 2021**

Appellant, Louis Henry Branch, appeals from the aggregate judgment of sentence of 25 to 50 years of confinement, plus payment of the costs of prosecution, which was imposed after his jury trial convictions for two counts each of rape of complainant who is less than 13 years of age and aggravated indecent assault of complainant who is less than 13 years of age.[1]  After careful review, we affirm.

> The record reflects that [A]ppellant was [initially] charged with 10 counts of rape of a child less than 13 years of age; 10 counts of aggravated indecent assault of a child less than 13 years of age;

---

* Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3121(a)(6) and 3125(a)(7), respectively.  Although Section 3121(a)(6) was repealed in 2003, the crimes took place between 1995 and 1998, predating its repeal.

2 counts of indecent assault -- complainant less than 13 years of age; and 1 count of unlawful contact with minor.

. . .

On April 5, 2016, [A]ppellant filed a petition for writ of **habeas corpus** alleging that his "confinement is unlawful and that the proceedings were in violation of due process of laws of the Federal Constitution and in violation of the Pennsylvania Constitution" because the evidence "did not establish [a] **prima facie** case" and [A]ppellant is "not guilty." . . . By order dated May 24, 2016, but docketed on May 26, 2016, the trial court denied [A]ppellant's petition for **habeas corpus**. On June 24, 2016, [A]ppellant filed a notice of appeal to this court.

**Commonwealth v. Branch**, No. 1947 EDA 2016, unpublished memorandum at 1-3 (Pa. Super. filed August 15, 2017) (footnote omitted). On August 15, 2017, this Court quashed the appeal. **Id.** at 1. Appellant filed a petition for allowance of appeal to the Supreme Court of Pennsylvania, which was denied on November 8, 2017. Meanwhile,

on May 30, 2017, and [again on] October 19, 2018, . . . Defense Counsel filed Motions to Withdraw, seeking appointment of new counsel. On both occasions the Motions were filed at [Appellant]'s behest and based on his refusal to cooperate with Defense Counsel, (allegations of irreconcilable differences, alleged irretrievable breakdowns of attorney-client communications,) and precipitated by his ungrounded initiation and pursuit of Disciplinary Board action against several members of Defense Counsel's office. The Disciplinary Board took no action on Appellant's complaints. Moreover, when called upon by the [trial c]ourt, [Appellant] failed to articulate, and the record likewise failed to reflect, any bases to support his ineffectiveness claims at either the February 20, 2018 hearing . . . or the October 30, 2018

- 2 -

[hearing.[2]] . . . Accordingly, the [trial c]ourt denied both Motions on February 21, 2018, and October 30, 2018, respectively.

On November 6, 2018, the case . . . proceeded to a four-day jury trial, at which the Commonwealth proceeded on [two charges each of rape of complainant who is less than 13 years of age and aggravated indecent assault of person less than 13 years of age. Appellant] proceeded with the benefit of Defense Counsel's representation until after the jury was empaneled[.]

Trial Court Opinion, 10/3/2019, at 4-5 (footnotes omitted).

Moments before the jury trial was to commence, the following exchange

occurred:

THE COURT:        Anything further?

[DEFENSE COUNSEL]: No, Your Honor.   I would just ask if [Appellant] wants me to continue to represent him or --

_____

[2] At the hearing on October 30, 2018, the trial court noted that Appellant already had, by that time, been assigned different individual attorneys from the Montgomery County Office of the Public Defender, in an attempt to placate him:

The public defender -- though they didn't have to – changed counsel, because you [*i.e.*, Appellant] said you had problems communicating with Ms. Allman, who is also a very seasoned lawyer and is actually the head of the homicide division of the public defender's office and tries many cases and does it well. They gave you Ms. Lucas, who is very experienced and knows what she's doing.  She's actually assigned to my courtroom, so I see her day in and day out, and I know what she does and how she tries cases; and I know the research she does, and I know the quality of her work.  But if you  want to represent yourself, that's your choice.

N.T., 10/30/2018, at 7-8.  We further note that, during Appellant's petition for writ of *habeas corpus*, he had been represented by two other public defenders, Benjamin Cooper, Esquire, and Hindi Sanders Kranzel, Esquire. ***See generally*** N.T., 5/23/2016; ***see also*** Petition for Writ of Habeas Corpus, 4/5/2016, at 2.

[APPELLANT]: No, Your Honor. She's fired. And I do not wish to represent myself. She's fired. She's dismissed.

THE COURT: You can't dismiss her. Your choice -- as I told you at a previous hearing, you have two choices. One, you can be represented by the Public Defender's Office, specifically [Defense Counsel]; or, two, you can represent yourself. They're your two choices. You've already indicated to me, on more than one occasion, that you don't want to represent yourself, and that [Defense Counsel] can represent you. Now we're at this juncture again, and I'm not going to be doing this every day.

[APPELLANT]: Your Honor, there's a complete breakdown in communication.

THE COURT: [Appellant], if there's a complete breakdown of communication, I lay that at your feet, not at the public defender's feet. It's you. It is pretty clear to me that you are obstreperous, that you seek to delay this matter, that you're finding every single excuse to do that. I'm not going to allow it.

[APPELLANT]: No, Your Honor. I wish to proceed to trial, but I want to proceed to trial with effective assistance of counsel.

THE COURT: You are receiving effective assistance of counsel . . . Okay?

[APPELLANT]: No, Your Honor. Because they did not -- I brought this to her attention prior to what she's saying. . . .

THE COURT: Here's where we are. And I'm going to ask you again, and then I'm not going to ask you anymore, nor am I going to allow to you interrupt this proceeding. All right?

You have two choices. We're going to go forward with [Defense Counsel], or we're going forward with you representing yourself. That jury is sitting back there and is coming out to hear this case at this point, barring something that causes me to declare a mistrial. I don't have that yet.

So let's direct as to whether or not you want to represent yourself one last time.

Do you wish to represent yourself? If you do, I'm obligated to go through a line of questioning with you to make sure you understand exactly what you're doing. We've done it already, but I'm going to do it again. If you don't want to represent yourself,

then you are going to be represented by [Defense Counsel], and that's how we're going forward. So give me that answer one last time, sir.

[APPELLANT]: Your Honor, I'll represent myself. If that's what this [c]ourt wants, I'll represent myself.

N.T., 11/7/2018, at 14-17. The trial court then conducted a *Grazier*[3] hearing.

At trial, during the Victim's testimony, the following occurred:

[Q.] Was there a time after this was happening that you did not regularly see [Appellant]?

A. Yes.

Q. Can you tell us a little bit about that time period, and how you felt at that time period, once you weren't regularly interacting with him?

A. Well, [Appellant] was in and out of jail a lot.

[APPELLANT]: Objection, Your Honor. Grounds for a mistrial, please. Thank you, sir.

[THE COMMONWEALTH]: May we be heard at sidebar, Judge?

THE COURT: Yes. . . .

[THE COMMONWEALTH]: Judge, my question was directed to how she was feeling emotionally at the time. I did not ask her where he was. So it wasn't the intention of the Commonwealth to elicit that testimony. . . .

THE COURT: . . . I would have thought, since it is an issue, I guess, regarding this alibi -- and the alibi being that [Appellant] was in prison -- that unless and until specifically asked, you would have at least cautioned your witness to make sure that that was not brought up.

[THE COMMONWEALTH]: Judge, I can certify that that was. We talked in general about sanitizing the trial, so that we weren't discussing him being in prison --

---

[3] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

THE COURT:    I accept your representation.

[THE COMMONWEALTH]:    I would just suggest that it's a spur-of-the-moment comment in response to my question about how she was feeling in the time period after she stopped seeing him regularly.

N.T., 11/7/2018, at 145-48.   Immediately following the conclusion of this sidebar, the trial court instructed the jury:

I think you heard, at the time that the objection was raised in response to a statement that the witness made about the [Appellant] being in jail, I have sustained an objection.  And as I told you in my opening remarks, when I sustain an objection and order something stricken from the record and direct that you not consider it, this is one of those times.  You are to disregard that statement made by the witness and her answer in that regard.  It is to have no effect on you.  It's as if it was never said.  So please disregard it, and we'll proceed from there.

*Id.* at 157.  Prior to the final jury charge, the trial court informed Appellant and the Commonwealth:

[THE COURT:]    Lastly, I do want to cover unless [Appellant] does not want me to highlight it anymore, I want to remind them again of my cautionary instruction at the time that it came out from [the Victim] that [Appellant] was in and out of jail.  My intent is to just once again remind them that that was stated, I told them to disregard it, and they must disregard that, and not have any adverse inference against the defendant based on that testimony that I'm telling them to disregard.

So the question for you, [Appellant,] is, do you wish me to give that charge, again to remind them; or, given that I gave them a cautionary instruction and I told them to disregard it, I could just simply remind them again that in my opening instruction to them that I told them that any testimony that I ordered stricken should be disregarded by them; or, I could be more specific and say that came out, I'm directing you to once again disregard it because I ordered it stricken, and you can have no adverse inference by virtue of it.  I can go either way.  I can be specific or general.

[APPELLANT]:    I want you to be very specific, Your Honor.

N.T., 11/8/2018, at 70-71. During final jury instructions, the trial court gave the agreed-upon charge:

> As I advised you in my opening instructions, part of my role in this case is to rule on any objections raised during the course of the trial; and that when I have sustained an objection and ordered that evidence to be stricken, you are to disregard that evidence. You may recall that [the Victim] referenced [Appellant]'s incarceration during her testimony. And as I instructed you at the time, you are to disregard that statement and draw no adverse inferences from her reference to [Appellant] being incarcerated. I now reemphasize that cautionary instruction. That statement should have been already disregarded by you, and it certainly needs to be disregarded by you now, and has no place in your deliberations.

N.T., 11/9/2018, at 31.

On November 9, 2018, a jury convicted Appellant of two counts each of rape and aggravated indecent assault, and, on March 22, 2019, the trial court sentenced him to an aggregate 25 to 50 years of confinement and ordered him to pay the costs of prosecution. The trial court did not make a determination of Appellant's ability to pay costs prior to imposing them. On April 11, 2019, Appellant filed this timely direct appeal.[4]

Appellant presents the following issues for our review:

> 1. Did the [trial court] err in denying counsel's multiple motions to withdraw and appoint alternative [counsel] due to a breakdown in the attorney-client relationship?
>
> 2. Did the [trial court] err in denying Appellant's motion for a mistrial after a witness who had been warned not to do so testified that he had been "in and out of jail a lot"?

---

[4] Appellant filed his statement of errors complained of on appeal on June 7, 2019. The trial court entered its opinion on October 3, 2019.

3. Did the [trial court] err in assigning an indigent defendant the costs of prosecution absent consideration of his ability to pay?

Appellant's Brief at 2 (suggested answers and trial court's answers omitted).

Appellant first contends that "[t]he trial court erred in denying multiple requests by [Appellant] and his counsel to appoint alternate counsel." Appellant's Brief at 5. Although there is no question that an indigent prisoner is entitled to free legal counsel, *see* U.S. Const. amend. VI; Pa. Const. art. 1, § 9, "[t]he decision of whether to appoint new counsel lies within the sound discretion of the trial court." *Commonwealth v. Keaton*, 45 A.3d 1050, 1070 (Pa. 2012) (citation omitted). "A motion for change of counsel by a defendant for whom counsel has been appointed shall not be granted except for substantial reasons." Pa.R.Crim.P. 122(C). "Furthermore, an indigent criminal defendant does not enjoy the unbridled right to be represented by counsel of his own choosing." *Commonwealth v. Jette*, 23 A.3d 1032, 1041 (Pa. 2011).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Thomas C. Branca, we conclude Appellant's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of that question:

> The record[, *see, e.g.*, N.T. 10/30/2018, at 7-8; N.T., 11/7/2018, at 14-17,] demonstrates that the Motions to Withdraw and/or Appoint New Counsel in this case were premised not on the requisite 'substantial reasons,' but instead, precipitated by [Appellant]'s self-created conflict. On both occasions, during the necessary hearings on the Motions, the [trial c]ourt instructed [Appellant] on the record that, while his indigence entitled him to

- 8 -

the appointment of counsel, it did not entitle him to the appointment of counsel of his choice. *See Jette*, 23 A.3d at 1041. Not only does the record reflect [Appellant]'s apparent inability and/or refusal to entrust his defense to seasoned and adept Defense Counsel, but it is similarly rife with countless indicia of his repeated attempts to assert unmeritorious claims, despite his dearth of legal knowledge. Contrary to [Appellant]'s bald assertions, Defense Counsel zealously litigated [Appellant]'s case, including but not limited to an appeal of the [trial c]ourt's denial of [Appellant]'s Petition for Writ of Habeas Corpus, and repeatedly confirmed her willingness and readiness to proceed with [Appellant]'s representation. Additionally, to the extent [Appellant] is asserting ineffectiveness claims, not only is appointed counsel precluded from asserting such claims against fellow colleagues, but such allegations are, likewise, premature and relegated, under present circumstances, to collateral review. *See Commonwealth v. Green*, 709 A.2d 382 (Pa. 1998).

Moreover, in an effort to appease [Appellant] and facilitate his defense, Defense Counsel re-assigned his case to various attorneys in the office, a handful of times, in an attempt to improve the tenor of communications with him. Defense Counsel's failed attempts to alleviate [Appellant]'s baseless concerns[] suggests that appointment of new counsel would fail to ameliorate [Appellant]'s instant ill-advised concerns. . . . Finding no bases upon which to grant appointment of new counsel, the [trial c]ourt advised [Appellant] on each occasion of his choice to proceed with Defense Counsel (the Montgomery County Public Defender) as his appointed counsel, or proceed pro se. . . .

[I]n *Commonwealth v. Sp*[*o*]*tz*, the [Supreme] Court [of Pennsylvania] held that the trial court acted appropriately in denying the motion for appointment of new counsel where the record demonstrated that the alleged underlying conflict was attributable entirely to defendant's own conduct and counsel affirmed its ability to zealously advocate on defendant's behalf notwithstanding his plot to inflict physical harm to counsel. *Sp*[*o*]*tz*, 756 A.2d [1139,] 1150 [(Pa. 2000)]. In denying the motion, the [Supreme] Court in *Sp*[*o*]*tz* was also mindful of the strong likelihood that, even with the appointment of new counsel, the challenges attendant to the current attorney-client relationship would remain. *Id.* at 1149.

In light of Defense Counsel's repeated assurances that it would continue its zealous advocacy on [Appellant]'s behalf, and the lack

of any substantial reasons in the record supporting [Appellant]'s claim of irreconcilable differences with Defense Counsel beyond his unilateral refusal to cooperate with counsel, and in full recognition of the likelihood that a new appointment would be similarly strained by [Appellant]'s lack of cooperation, the [trial c]ourt properly denied the Motions to Withdraw[.]

Trial Court Opinion, 10/3/2019, at 19–21 (footnotes omitted). Accordingly, we find that the trial court did not abuse its discretion by denying Appellant's repeated requests for new counsel. *See Keaton*, 45 A.3d at 1070.

Next, Appellant argues that the trial court erred in denying his motion for a mistrial. Appellant maintains that both the Commonwealth and the Victim "were aware of the risk that certain questions and answers could result in prejudicial and impermissible testimony regarding [Appellant]'s prior incarceration." Appellant's Brief at 13. He continues: "During direct examination of the complainant, the [Commonwealth] asked the complainant questions . . . specifically about periods of time in [which he] was unavailable, knowing that the timeframe directly correlated to periods of time in which [Appellant] was incarcerated." *Id.* He concludes that the Commonwealth "reasonably should have known [its] questions were likely to elicit [a] reference to [Appellant]'s time of incarceration." *Id.*

"We review the trial court's decision to deny a mistrial for an abuse of discretion." *Commonwealth v. Bedford*, 50 A.3d 707, 712 (Pa. Super. 2012) (*en banc*).

> A mistrial is warranted when a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity. When the statement at issue relates to a reference to past criminal behavior, the nature of the reference and whether

- 10 -

the remark was intentionally elicited by the Commonwealth are considerations relevant to the determination of whether a mistrial is required. A singular, passing reference to prior criminal activity is usually not sufficient to show that the trial court abused its discretion in denying the defendant's motion for a mistrial. **Commonwealth v. Allen**, 448 Pa. 177, 181, 292 A.2d 373, 375 (1972). When the trial court provides cautionary instructions to the jury in the event the defense raises a motion for mistrial, "[t]he law presumes that the jury will follow the instructions of the court." **Commonwealth v. Brown**, 567 Pa. 272, 289, 786 A.2d 961, 971 (2001) (citation omitted), *cert. denied*, 537 U.S. 1187, 123 S.Ct. 1351, 154 L.Ed.2d 1018 (2003).

**Commonwealth v. Parker**, 957 A.2d 311, 319 (Pa. Super. 2008) (some internal brackets, citations, and quotation marks omitted); **see also Farese v. Robinson**, 222 A.3d 1173, 1184 (Pa. Super. 2019) ("[i]t is well settled that the jury is presumed to follow the trial court's instructions" (quoting **Commonwealth v. Cash**, 137 A.3d 1262, 1280 (Pa. 2016)), *reargument denied* (January 13, 2020).

Contrary to Appellant's insinuation that the Commonwealth intentionally elicited the reference to Appellant's frequent incarceration, there is no evidence thereof. Instead, the Commonwealth explained that the Victim's divulgement was a "spur-of-the-moment comment[,]" whereas the aim of its question was merely to educe how the Victim was feeling at the time. N.T., 11/7/2018, at 147-48. Additionally, the Commonwealth attested that, prior to trial, it had specifically cautioned the Victim not to mention Appellant's past incarceration, and the trial court found this representation to be credible. *Id.* at 148. Furthermore, Appellant has presented no evidence contradicting the Commonwealth's representations. As the trial court observed, the Victim

"made a single passing reference to [Appellant]'s past incarceration, only as a means of explaining his absence from her life for certain periods during the time frame at issue." Trial Court Opinion, 10/3/2019, at 11. Since the remark was a singular, passing reference and not intentionally elicited by the Commonwealth, we cannot find that the trial court abused its discretion in denying Appellant's motion for a mistrial. *Parker*, 957 A.2d at 319.

In addition, the trial court twice provided specific cautionary instructions – following the sidebar on this issue and during the final charge, with Appellant agreeing to the latter instruction. N.T., 11/7/2018, at 157; N.T., 11/9/2018 at 31; *see also* N.T., 11/8/2018, at 70-71. We must presume that the jury followed these cautionary instructions, *Parker*, 957 A.2d at 319; *Farese*, 222 A.3d at 1184, and, for this reason as well, we conclude that the trial court's decision to deny Appellant's request for a mistrial was not an abuse of discretion. *Bedford*, 50 A.3d at 712.

Finally, Appellant argues that Pa.R.Crim.P. 706(C) requires the trial court to consider the defendant's ability to pay before imposing costs at sentencing and argues that this Court must therefore vacate the trial court's imposition of costs. This argument likewise fails. During the pendency of this appeal, this Court addressed this precise issue in *Commonwealth v. Lopez*, 248 A.3d 589 (Pa. Super. 2021) (*en banc*)[5] and rejected the argument that

---

[5] A petition for allowance of appeal from this decision was filed in the Pennsylvania Supreme Court on April 22, 2021 and is pending at 178 EAL 2021.

Appellant asserts here. In **Lopez**, this Court held that Rule 706(C) only requires the trial court hold a hearing on the defendant's ability to pay where the defendant faces incarceration for non-payment and that the trial court is not required to make a presentence determination of the defendant's ability to pay before imposing costs. 248 A.3d at 590, 592-95. Because no presentence determination of Appellant's ability to pay was required, there is no error in the trial court's imposition of costs on Appellant.

For the foregoing reasons, we conclude that the trial court did not abuse its discretion in denying Appellant's motions to appoint new counsel, did not abuse its discretion in denying his motion for a mistrial, and did not err in imposing costs without a determination of ability to pay. Accordingly, we affirm the trial court's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/4/21