J-S91044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                                               :  PENNSYLVANIA
                                               :
            v.                                    :
                                               :
ZACHARY CHANCE ETKA            :
                                               :
          Appellant              :  No. 1919 MDA 2015

Appeal from the Judgment of Sentence March 5, 2015
In the Court of Common Pleas of Bradford County
Criminal Division at No(s):  CP-08-CR-0000431-2014

BEFORE:  FORD ELLIOTT, P.J.E., RANSOM, J., and STEVENS[*], P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:        **FILED JANUARY 10, 2017**

Appellant, Zachary Chance Etka, appeals *pro se*[1] from the judgment of

sentence entered in the Court of Common Pleas of Bradford County following

his conviction by a jury on three counts of robbery, three counts of

---

[1] Appellant was represented by court-appointed counsel throughout the proceedings in the trial court, including the filing of a counseled notice of appeal to this Court.  However, thereafter, Appellant filed a motion in the trial court requesting permission to proceed *pro se* on appeal, and in response, counsel filed in this Court an application for remand for a ***Grazier*** hearing.  Accordingly, by order filed on May 24, 2016, we remanded this matter for a hearing, and on July 11, 2016, the trial court filed an order indicating it held a ***Grazier*** hearing and determined Appellant has knowingly, intelligently, and voluntarily waived his right to counsel on appeal. Appellant subsequently filed in this Court a *pro se* brief, which we shall consider.

[*] Former Justice specially assigned to the Superior Court.

conspiracy, two counts of terroristic threats, and one count of receiving stolen property.[2]  After a careful review, we affirm.

Following Appellant's arrest in connection with the robbery of a bank, Appellant, who was represented by counsel, proceeded to a jury trial on November 20, 2014.  The trial court has aptly summarized the testimony and evidence presented during the trial as follows:

On May 15, 2014[,] at approximately 1:00 p.m., [Appellant] and [his co-conspirator,] Chaz Talada parked in the parking lot in front of Citizens and Northern Bank located in East Smithfield, Bradford County, Pennsylvania.  A bank teller on duty noticed the vehicle and [that] the individuals inside seemed to be looking around. [N.T. 11/20/14 at 20.]  A male exited the vehicle wearing a white baseball cap, sunglasses, and a heavy winter coat, which [seemed] unusual [to the teller] because it was not cold that day.  [*Id.*]  The individual was carrying a backpack.  [*Id.*]  The individual entered the bank, approached a teller window, showed a hand gun, passed over the bag[,] and demanded money.  [*Id.* at 22.]  The teller placed the money from her drawer and the next teller['s] drawer into the bag.  [*Id.* at 23.] Included in the money was "bait money," [for] which the serial numbers ha[d] been recorded.  [*Id.*]  [The teller] handed the bag back to the individual[,] and he left the building.  [*Id.* at 24.]  The teller then hit the bank alarm and went to the window to get the license plate number of the vehicle, but there was no plate on the car.  [*Id.*]  The second teller identified the vehicle as a green Subaru with a black gas tank cover.  [*Id.* at 28.]

New York State Trooper Mary Carsen, upon learning of the robbery over a radio transmission and the direction the vehicle was heading, drove to the town of Wellsburg, New York in hopes of locating the vehicle.  She did locate a green Subaru[, which was] pulled up against the back of a minimart.  [*Id.* at 36.] [Prior to Trooper Carsen's arrival upon the scene,] [Appellant]

---

[2] 18 Pa.C.S.A. §§ 3701(a)(1)(vi), (ii), and (iv); 903; 2706(a)(1); and 3825, respectively.

had entered the minimart and purchased a pack of cigarettes. This was shown on the video surveillance from the minimart. [Subsequently,] [a] Pennsylvania State Trooper[, Michael Adams,] [also] arrived at the scene[,] and [Appellant and Talada] exited their vehicle. [*Id.* at 37.]

[After frisking the two men for weapons, the troopers placed the men in separate vehicles. Trooper Adams questioned Talada and then, after reading him his *Miranda* rights, questioned Appellant. *Id.* at 55-56.] [Trooper Adams] testified that [Appellant told him] the vehicle belonged [to him.] [*Id.* at 56.] [Appellant] said he did nothing wrong. [*Id.*] [Appellant] told [the] trooper that when [Talada] went into [the] bank, he couldn't drive away because he did not have a driver['s] license; that he didn't walk away because [Talada] was his friend; and that he did not attempt to call [the] police or anyone [else]. [*Id.*] [Appellant] did tell [the] trooper that he and [Talada] had planned the robbery earlier that day[,] and that upon arriving at the bank, he told [Talada] not to commit the robbery. [*Id.* at 62.]

[Pennsylvania State Corporal Douglas Smith testified that the vehicle was impounded and he searched it pursuant to a search warrant. *Id.* at 64.] [He] testified that a backpack was in the vehicle on the floorboard of the driver's side and the cash from the bank was inside [of] the backpack[. *Id.* at 65.] [The backpack also contained] a pistol pellet gun ... a jacket with a hood on it, ... and a white baseball cap. [*Id.* at 65-87.] The cash totaled $3,342.00[, which] was the amount reported stolen. [*Id.* at 71, 76, 89.] Also in the vehicle were improvised smoking devices and marijuana. [*Id.* at 75.]

[Pennsylvania State Corporal Norman Strauss, III, testified that after Appellant's arrest he gave him his *Miranda* rights and transported him to the police station. *Id.* at 77-78.] [Appellant] [ ] told him that he thought about robbing the bank two days prior; it was his idea; he planted the seed in his friend's (Talada's) head; and he did a 30 second Google research on the topic of successful bank robberies. [*Id.* at 79, 83.] Further, [he told the corporal] that he waited in the vehicle while [Talada] entered [the] bank and then traveled to the minimart where they were picked up by [the] state police. [*Id.* at 80.] Also, there were times when [Appellant] [told the corporal that] the conversation about the robbery with [Talada] was a joke. [*Id.*

at 83.] Finally, [ ] [Appellant] [told Corporal Strauss that he] wouldn't commit the robbery but [Talada] had his mind set on it.

Annetta Lewis testified that she was an employee of the minimart where [Appellant] was [apprehended]. When she left work [on] the day of the robbery, she noticed two men in a vehicle with cash in their hands. [*Id.* at 92.] The passenger was the only one she could see and he had a lot of cash in his hand. [*Id.* at 91-92.]

\*\*\*

[Pennsylvania State Trooper Nathan Lewis] testified that he [advised Appellant of his **Miranda** rights and] interviewed him at the police barracks. [*Id.* at 96-97.] [Appellant] indicated that he and [Talada] had been together for two days and had been using mind altering substances. [*Id.* at 97.] He told Trooper [Lewis] that they discussed a bank robbery and that the original plan was for him to go into the bank. [*Id.*] [Appellant] stated that they proceeded to the bank and along the way stopped to remove the license plate from a vehicle. [*Id.*] [Appellant indicated] they parked near the bank[,] discussed the robbery for approximately fifteen minutes[,] and [Appellant] tried to talk [Talada] out of the robbery. [*Id.* at 98.] They then drove to the bank. [Appellant stated] he then advised [Talada] that he did not want to go into the bank. [*Id.*] [Talada] entered [the] bank and came out[,] and they [then] fled [in the vehicle.] [*Id.*] [Appellant told the trooper] that while he and [Talada] were talking about [the robbery,] it was a joke. [*Id.* at 105.] Trooper Lewis also testified that he determined that [Appellant] did not have a valid driver['s] license. [*Id.* at 109.]

[The] [d]efense presented the testimony of [Talada, who] admitted to the robbery of the bank.[3] He admitted that he drove to the bank and he went into the bank wearing a coat, gloves[,] and sunglasses,[ which were] all his. [*Id.* at 115-16.] He also admitted that he was wearing a backpack that belonged to [Appellant, and it was Appellant's idea to use the backpack during the robbery. *Id.* at 116, 130.] [Talada testified

_____

[3] Prior to Appellant's jury trial, Talada entered a guilty plea in connection with the robbery.

Appellant] gave him the backpack when they went to the bank. [*Id.* at 130.] [He testified the] pellet gun was not loaded [but he] pointed the gun at the tellers. [*Id.* at 116.] [Talada testified that, prior to robbing the bank, he and Appellant sat in the car near the bank and talked about the robbery. *Id.* at 117.] [Appellant] told him he did not want to do it and suggested that he should do it. [*Id.*] They had conversations about robbing the bank [in the days leading up to the robbery, including] the day before[, at which time] they had been smoking marijuana. [*Id.* at 117-18.] He had also been taking Percocet and heroin. [After being apprehended, Talada] told the state troopers that he needed money for rent and to get his car repaired. [*Id.* at 124.] He testified that he [was] addicted to heroin and needed money to purchase more. [*Id.* at 123.] [Talada] testified that [Appellant] was too scared to commit the robbery and wanted [Talada] to do so. [Prior to the robbery, Appellant] took the license plate off the car. [*Id.* at 131.] [Talada testified that, when they left the house to commit the robbery, Appellant knew the robbery was going to happen. *Id.*] [At this time, Appellant] was wearing gloves ... and [a] jacket[.] [*Id.*] [After Appellant decided not to go into the bank, the men discussed Appellant getting a portion of the money. *Id.* at 132.] [Appellant] was going to use the money towards his business. [Talada] testified that [Appellant] did not tell him to not go in the bank. [*Id.* at 135.] [After the robbery, the men] began counting the money at the minimart[, and Talada gave Appellant a "handful."] [*Id.*] After [Talada] came out of [the] bank, he handed all the "stuff"—clothing, etc., to [Appellant] because he removed it as he was driving[,] and [Appellant] put it in the back[, as well as] hid the gun. [*Id.* at 136.]

[Appellant] testified as follows: That he and [Talada] were watching a movie, smoking marijuana[,] and talking about the robbery hypothetically. [*Id.* at 145.] The day of the robbery, there were a lot of clothes and items in his car, so he did not notice anything out of the ordinary. [*Id.* at 149.] [He and Talada] drove around. Periodically, they would stop and [Talada] would get some marijuana out of the trunk of the car. [*Id.* at 150.] [Talada was driving Appellant's car on the day of the robbery. *Id.* at 149.] [Appellant testified that he] never knew [Talada] was going to rob the bank. [*Id.* at 151.] [When the men got close to the bank, Talada brought up robbing the bank[,] and [Appellant] [tried to] talk[] him out of it. [*Id.* at 152.] [Talada] agreed to go home, but he pulled into the bank[.

- 5 -

*Id.*] [Talada] went into the bank and was out in twenty some seconds, so [Appellant] did not jump to conclusions. [*Id.* at 152-53.] [Talada] put [the] bag by his leg on [the] driver['s] side. Upon arriving at the minimart, [Talada had] money in his hand and that was the first time [Appellant] realized that [Talada] had robbed the bank. [*Id.* at 154.] [Appellant took] $5.00 from [Talada] and went inside the minimart to buy cigarettes. [*Id.*] If the police had not [arrived,] he would have called them. He was not aware that [the] license plate [had been] removed. [*Id.* at 157.]

The pellet gun was not processed for fingerprints or other trace evidence. [*Id.* at 88.] [T]here was no evidence from [Appellant's] cellphone regarding a Google search. [*Id.*]

Trial Court Opinion, filed 3/11/16, at 2-5 (footnote added).

At the conclusion of all evidence, the jury convicted Appellant of the offenses indicated *supra*, and he was sentenced to an aggregate of forty-six months to ninety-six months in jail. Appellant filed a timely, counseled post-sentence motion, which was denied by operation of law on October 19, 2015. On October 29, 2015, counsel simultaneously filed on behalf of Appellant a notice of appeal and a Concise Statement pursuant to Pa.R.A.P. 1925(b). Thereafter, on March 11, 2016, the trial court entered its Pa.R.A.P. 1925(a) order.

Subsequently, as indicated *supra*, following a **Grazier** hearing, Appellant was granted permission to proceed *pro se* on appeal. Appellant filed a petition seeking permission to amend his Pa.R.A.P. 1925(b) statement, which had been filed by counsel, and this Court directed the trial court to rule on the motion. On August 22, 2016, the trial court granted Appellant permission to file an amended Pa.R.A.P. 1925(b) statement, and

on August 31, 2016, Appellant filed an amended *pro se* Pa.R.A.P. 1925(b) statement. The trial court filed a supplemental opinion on September 21, 2016.

In his first claim, Appellant contends the evidence was insufficient to sustain his convictions.[4] Specifically, Appellant contends that he could not be convicted of the crimes since the evidence proves Appellant was merely present in the vehicle while Talada committed the robbery. Appellant argues "there is no evidence supported by the record of an unlawful agreement, [ ] of Appellant's participation in the criminal act, [ ] of specific intent that Appellant intended for [the robbery] to happen ... [or of] Appellant['s] participat[ion] in any of [Talada's] misdeeds." Appellant's Brief at 19-20.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no

_____

[4] Intertwined within Appellant's sufficiency claim are various challenges to the credibility of testimony from various witnesses. Such challenges are more appropriately addressed as weight of the evidence claims, and thus, we shall address these claims with Appellant's additional weight of the evidence claims *infra*. **Commonwealth v. Wilson**, 825 A.2d 710, 713–14 (Pa.Super. 2003) (holding that review of the sufficiency of the evidence does not include an assessment of the credibility of testimony; such a claim goes to the weight of the evidence).

probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Further, in viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the court must give the prosecution the benefit of all reasonable inferences to be drawn from the evidence.

*Commonwealth v. Harden*, 103 A.3d 107, 111 (Pa.Super. 2014) (quotation marks and quotations omitted).

Here, there is no dispute that Talada was the person who actually entered and robbed the bank at issue and that Appellant remained outside in the vehicle during the robbery. However, Appellant's guilt as to the crimes was premised upon conspiratorial liability.

To convict a defendant of conspiracy, the trier of fact must find that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a "co-conspirator") to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. 18 Pa.C.S.[A.] § 903. The essence of a criminal conspiracy, which is what distinguishes this crime from accomplice liability, is the agreement made between the co-conspirators.

"[M]ere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient" to establish that a defendant was part of a conspiratorial agreement to commit the crime. There needs to be some additional proof that the defendant intended to commit the crime along with his co-conspirator. Direct evidence of the defendant's criminal intent or the conspiratorial agreement, however, is

rarely available. Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by "the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators." Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act.

***Commonwealth v. Murphy***, 577 Pa. 275, 292, 844 A.2d 1228, 1238 (2004) (citations and quotations omitted).

Here, viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, the evidence is sufficient to establish that Appellant was not merely associated with Talada, was not merely present at the scene, and did not have mere knowledge of the crime. Rather, the evidence sufficiently establishes that Appellant conspired with Talada to rob the bank and, accordingly, he is liable for all overt acts committed in furtherance of the conspiracy. ***See Murphy***, ***supra***.

For instance, Talada testified that, for a few days prior to the robbery, he and Appellant discussed robbing a bank. He indicated that Appellant gave him the backpack to use during the robbery, and on the day of the robbery, they left the house with both men wearing jackets and gloves, despite the fact it was a warm day in May. Talada drove Appellant's vehicle, in which Appellant was a passenger. Talada testified that, prior to the robbery, Appellant removed the license plate from the vehicle and, as they arrived at the bank, Appellant expressed fear, indicating he would remain in

the vehicle. Talada further testified that, after the robbery, as the men drove away from the bank, Talada handed his clothing and the pellet gun to Appellant, who put the items in the back of the vehicle. Later that same day, the men began to split the stolen money while parked at a minimart, but they were interrupted when they were apprehended by the police.

Furthermore, three state troopers testified Appellant admitted to them that, in the days preceding the robbery, he and Talada had discussed robbing a bank. Trooper Strauss, who transported Appellant to the police station, specifically testified Appellant admitted that he thought about robbing the bank and had "planted the seed in Talada's head." N.T. 11/20/14 at 79. Additionally, Trooper Lewis, who interviewed Appellant at the police station, testified Appellant admitted to him that the original plan involved Appellant entering the bank, along with Talada; however, just before the robbery, Appellant decided to wait in the car. *Id.* at 97-100.

Accordingly, based on the aforementioned, we conclude the evidence was sufficient to establish the necessary elements for conspiracy under Section 903, thus rendering Appellant liable for all of the overt acts committed in furtherance of the conspiracy. Thus, we find no merit to his first claim.

In his second claim, Appellant contends the jury's verdict was against the weight of the evidence. Specifically, he alleges that a new trial is warranted since (1) the Commonwealth's case included testimony and

evidence consistent with Appellant's trial testimony that he was joking when he told Talada he wanted to rob a bank; (2) the evidence reveals Appellant was unaware that Talada was addicted to heroin such that he could not possibly have been aware that Talada was serious about robbing a bank; (3) the state troopers' testimony was "full of perjury and false evidence;" and (4) the credible evidence establishes Appellant abandoned any plan to rob a bank prior to Talada robbing the bank.[5]

In reviewing a challenge to the weight of the evidence, we are mindful of the following:

> [A] new trial can only be granted on a claim that the verdict was against the weight of the evidence in the extraordinary situation where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. An appellate court cannot substitute its judgment for that of the finder of fact.

*Commonwealth v. Drumheller*, 570 Pa. 117, 143, 808 A.2d 893, 908 (2002) (quotation marks and quotations omitted). "[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." **Commonwealth v. Askins**, 761 A.2d 601, 603 (Pa.Super. 2000) (quoting *Commonwealth v. Valette*, 531 Pa. 384, 388, 613 A.2d 548, 549 (1992)). Furthermore:

---

[5] Appellant sufficiently preserved his weight of the evidence claim in his timely post-sentence motion. **See** Pa.R.Crim.P. 607.

- 11 -

> [Where] ... the judge who presided at trial ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Tharp*, 574 Pa. 202, 217–18, 830 A.2d 519, 528 (2003) (citations omitted).

In its Pa.R.A.P. 1925(a) opinion, the trial court addressed Appellant's weight of the evidence claims and concluded they lack merit. With regard to Appellant's allegation that there was ample, credible evidence, including from the Commonwealth's own witnesses, that he was joking about committing a robbery, the trial court indicated the jury was free to weigh this testimony along with the other evidence. Trial Court Opinion, filed 3/11/16, at 9. While state troopers testified that, upon questioning, Appellant told them that he had been joking with Talada when they discussed the robbery and in the moments before the robbery he told Talada not to do it, the jury was free to conclude Appellant made the statements to the police for self-serving reasons.

With regard to Appellant's allegations that he was unaware that Talada was addicted to heroin such that he could not possibly have been aware that Talada was serious about robbing a bank, the state troopers' testimony was "full of perjury and false evidence," and the evidence establishes Appellant abandoned any plan to rob a bank prior to Talada robbing the bank, Appellant asks us to reweigh the evidence in his favor. As the trial court

indicated, the jury was in the best position to view the demeanor of the witnesses, assess each witness' credibility, and resolve any inconsistencies in their testimony in the Commonwealth's favor. *Commonwealth v. Olsen*, 82 A.3d 1041, 1049 (Pa.Super. 2013). Based on the facts elicited at trial and believed by the jury, the trial court determined that the verdict was not against the weight of the evidence. Appellant has not demonstrated that the trial court committed a palpable abuse of discretion by rejecting his request for a new trial based on the weight of the evidence, and thus, we find no abuse of discretion. *Tharp*, *supra*.

In his third claim, Appellant argues the trial court erred in denying Appellant's motion for a new trial based on the Commonwealth's late disclosure of an eyewitness, Annetta Lewis.[6] We find this issue to be waived.

Appellant's entire appellate argument regarding this issue, which we set forth verbatim, is as follows:

> The Trial court erred in denying a Motion for New Trial based on Late Disclosure of Eye-witness. At trial the Commonwealth presented the testimony of Anetta [*sic*] Lewis, Dandy Mini-Mart worker, who was discovered due to her family relationship with an employee of the courthouse who was discussing the case with her. The Defense was notified of this witness at 4:30 pm the eve of trial, after jury had been selected. The defense objected to the introduction of this evidence as the Commonwealth had

_____

[6] As the trial court indicates in its supplemental Rule 1925(a) opinion, the Commonwealth notified Appellant of the witness the day before trial, after the jury was selected. Trial Court Opinion, filed 9/21/16, at 2.

- 13 -

not previously indicated that it would seek to present this testimony. The Appellant was prejudiced in this late disclosure of eye-witness and in not being able to adequately investigate this witness and her ability to perceive and recall the events in question before trial. Wherefore, Appellant requests a New trial based on the denial of the Motion for New Trial on Late Disclosure of Eye-Witness.

Appellant's Brief at 22.

Appellant has not adequately developed his argument on appeal. For instance, as is evident, Appellant neither provided this Court with any relevant citations supporting his assertion nor set forth that place in the record where he objected to Ms. Lewis testifying on this basis.[7] **See** Pa.R.A.P. 2119(b), (e). Moreover, Appellant's bald assertion of error and prejudice is insufficient to permit meaningful review in this case.[8] **See** Pa.R.A.P. 2119.

While we acknowledge Appellant is proceeding *pro se* in this appeal, his *pro se* status does not entitle him to any advantage due to his lack of

_____

[7] It is noteworthy that, in its opinion, the trial court concluded Appellant has waived the issue since there was no objection placed on the record to Ms. Lewis testifying. **See** Trial Court Opinion, filed 9/21/16, at 2-3.

[8] In any event, the trial court noted any error was harmless since the evidence against Appellant was overwhelming. Trial Court Opinion, filed 9/21/16, at 3. Further, the trial court noted:

> The witness had little to offer other than stating she saw two men in a vehicle when she left work at the Dandy Mini Mart where [Appellant and Talada] were found and the man in the passenger seat had cash in his hands—not a large amount to cause alarm, but more than a little.

**Id.** (citation to record omitted).

legal training. ***See Commonwealth v. Ray***, 134 A.3d 1109 (Pa.Super. 2016). Rather, as a *pro se* litigant, Appellant must still abide by the Rules of Appellate Procedure and his decision to represent himself requires him to "a reasonable extent assume[ ] the risk that his legal training will place him at a disadvantage." ***Id.*** at 1114-115 (citation omitted).

In his fourth claim, Appellant alleges the prosecutor engaged in misconduct by permitting three state troopers to perjure themselves on the stand. He also alleges the prosecutor improperly informed the jury during closing arguments that Talada "has no reason to lie, he has no interest in this case." N.T. 11/20/14 at 173-74.

Initially, we note that Appellant has waived these claims. With regard to the alleged perjured testimony given by three state troopers, Appellant has failed to indicate precisely which portions of the testimony he is challenging. Rather, he baldly asserts:

> [T]he District Attorney lead [*sic*] three State Troopers—Trooper Adams, Trooper Strauss[,] and Trooper Lewis—to perjure themselves on the stand,--[to] lie in front of the jury about what is on record—to prejudice, harass[,] and attack the Appellant[']s credibility by the use of false evidence and false testimony, known to be by him, and allowed to go uncorrected as it appeared[.]

Appellant's Brief at 22-23. Such vague assertions do not permit meaningful review. ***See*** Pa.R.A.P. 2119.

Moreover, with regard to the prosecutor's statement, which he made during closing arguments to the jury, Appellant failed to object to the

- 15 -

prosecutor's statements at trial. Accordingly, he has waived any challenge thereto. ***See Commonwealth v. Ali***, 608 Pa. 71, 10 A.3d 282 (2010) (stating failure to raise objection to prosecutor's comment at trial waives claim of error arising from comment).

Notwithstanding Appellant's waiver of the claim, a new trial is not warranted.

> Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion. In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one. Not every inappropriate remark by a prosecutor constitutes reversible error. A prosecutor's statements to a jury do not occur in a vacuum, and we must view them in context. Even if the prosecutor's arguments are improper, they generally will not form the basis for a new trial unless the comments unavoidably prejudiced the jury and prevented a true verdict.

***Commonwealth v. Bedford***, 50 A.3d 707, 715–16 (Pa.Super. 2012) (*en banc*) (citations, quotation marks, and quotations omitted).

With regard to the prosecutor presenting the testimony of the three state troopers, the trial court indicated:

> [Appellant] first claims that the District Attorney knowingly led three state troopers to lie and allowed perjury. [Appellant] does not point to a specific portion of the record to support his claim. Although [Appellant's] testimony was in conflict with that of the state troopers, there is nothing upon review of the record to indicate that a state trooper gave false testimony or that false evidence was presented. Defense counsel thoroughly cross-examined each witness. [Appellant] is arguing that his testimony should be believed over that of three Pennsylvania state troopers who testified. In weighing the credibility of a witness, including the defendant, the jury is free to weigh and reject the questions trial counsel raised. The jury obviously found the state troopers'

- 16 -

testimony more credible than [Appellant's testimony]. This is not prosecutorial misconduct.

Trial Court Opinion, filed 9/21/16, at 4-5. We find no abuse of discretion in this regard.

Additionally, with regard to the prosecutor's statements during closing argument, the trial court indicated, in relevant part:

[The challenged statements] can hardly be characterized as prosecutorial misconduct. The prosecutor is drawing inferences on the evidence that was presented. Further, the [prosecutor's] remarks [were a fair] response to defense counsel's attack on [Talada] arguing he was lying. *See* [N.T. 11/20/14 at] 164, 166 (wherein defense counsel [argued during closing] that [Talada] was lying).

Trial Court Opinion, filed 9/21/16, at 6. We find no abuse of discretion in this regard. ***Commonwealth v. Judy***, 978 A.2d 1015 (Pa.Super. 2009) (holding the prosecutor may fairly respond to comments made by defense counsel during closing and may draw fair inferences from the evidence presented).

In his fifth claim, Appellant alleges the trial court erred in denying his pre-trial motion *in limine* seeking to disqualify the district attorney, Daniel J. Barrett, Esquire, from prosecuting this case. Appellant initially avers disqualification was necessary under the Rules of Professional Conduct since the district attorney and Talada's counsel, Patrick Barrett, are brothers. Appellant additionally suggests disqualification was necessary since the district attorney had a conflict of interest in that he utilized Talada to present false testimony against Appellant so that the district attorney could convict

- 17 -

Appellant, and in return, the district attorney gave his brother's client (Talada) favorable treatment

We note that "[w]e review the trial court's decisions on disqualification and conflict of interest for an abuse of discretion." **Commonwealth v. Sims**, 799 A.2d 853, 856 (Pa.Super. 2002).

In his pre-trial motion, Appellant sought disqualification of the district attorney under Pennsylvania Rule of Professional Conduct 1.7, which provides the following:

> **Rule 1.7. Conflict of Interest: Current Clients**
> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>     (1) the representation of one client will be directly adverse to another client; or
>     (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>     (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
>     (2) the representation is not prohibited by law;
>     (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
>     (4) each affected client gives informed consent.

Pa. R. Prof. Conduct, Rule 1.7.

In the case *sub judice*, we conclude the district attorney was not required to be disqualified under Rule 1.7. By its plain terms, Rule 1.7

relates to a client's interest as it relates to his attorney. Appellant is not the client of either Daniel J. or Patrick Barrett. Simply put, Appellant has not explained how Rule 1.7 is applicable to his circumstance.

Furthermore, we find meritless Appellant's suggestion the district attorney had a conflict of interest in that he utilized Talada to present false testimony against Appellant so that the district attorney could convict Appellant, and in return, the district attorney gave his brother's client (Talada) favorable treatment. The record reveals that Appellant, and not the district attorney, called Talada as a witness during trial. Moreover, aside from vague, bald assertions, Appellant has not explained what false testimony was suborned by the district attorney. Accordingly, the trial court did not abuse its discretion in denying Appellant's pre-trial motion seeking disqualification of the district attorney. **See Sims**, **supra**.

In his final claim, Appellant alleges the trial court erred in permitting the Commonwealth to amend the Information in violation of Pennsylvania Rule of Criminal Procedure 564. Specifically, he avers the trial court improperly permitted the Commonwealth to amend the original Information to add new, additional charges resulting in prejudice to him.

Our rules of criminal procedure allow a trial court to grant a motion to amend a criminal information "when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge

an additional or different offense." Pa.R.Crim.P. 564. After allowing such an amendment, "the court may grant such postponement of trial or other relief as is necessary in the interests of justice." ***Id.***

Our courts have applied amendment rules "with an eye toward [their] underlying purposes and with a commitment to do justice rather than be bound by a literal or narrow reading of procedural rules." ***Commonwealth v. Grekis***, 601 A.2d 1284, 1289 (Pa.Super. 1992). This Court has observed that "[t]he purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." ***Commonwealth v. Mentzer***, 18 A.3d 1200, 1202 (Pa.Super. 2011) (quotation marks and quotation omitted). Thus, our case law "sets forth a broader test for propriety of amendments than the plain language of the rule suggests." ***Commonwealth v. Mosley***, 585 A.2d 1057, 1060 (Pa.Super. 1991) (*en banc*) (citation omitted).

In reviewing a challenge to the propriety of an amendment, this Court:

> will look to whether the appellant was fully apprised of the factual scenario which supports the charges against him. Where the crimes specified in the original information involved the same basic elements and arose out of the same factual situation as the crime added by the amendment, the appellant is deemed to have been placed on notice regarding his alleged criminal conduct and no prejudice to defendant results.

***Commonwealth v. Sinclair***, 897 A.2d 1218, 1222 (Pa.Super. 2006)

(citations omitted). Relief is proper only where the amendment prejudices a

defendant. ***Id.***

Further, the factors which the trial court must consider in determining

whether an amendment is prejudicial are:

> (1) whether the amendment changes the factual scenario supporting the charges; (2) whether the amendment adds new facts previously unknown to the defendant; (3) whether the entire factual scenario was developed during a preliminary hearing; (4) whether the description of the charges changed with the amendment; (5) whether a change in defense strategy was necessitated by the amendment; and (6) whether the timing of the Commonwealth's request for amendment allowed for ample notice and preparation.

***Id.*** (citation omitted). Most importantly, we emphasize that "the mere

possibility amendment of information may result in a more severe penalty ...

is not, of itself, prejudice." ***Commonwealth v. Mentzer***, 18 A.3d 1200,

1203 (Pa.Super. 2011) (quotation and quotation marks omitted).

Here, in explaining the reasons it granted the Commonwealth's motion

to amend the original Information, the trial court relevantly explained as

follows:

> The original [I]nformation charged Criminal Conspiracy—Robbery—demand money from financial institution, F2, 18 Pa.C.S.A. § 903(a)(1) and § 3701(a)(1)(vi) and Robbery—demand money from financial institution, F2, 18 Pa.C.S.A. § 3701(a)(1)(vi). The Commonwealth filed a Motion to Amend Information on September 26, 2014, to include: Robbery, F1, 18 Pa.C.S.A. § 3701(a)(1)(ii); Robbery, F2, 18 Pa.C.S.A. § 3701(a)(1)(iv), and two counts of Conspiracy to Commit Robbery, 18 Pa.C.S.A. § 903(a)(1), and § 3701(a)(1)(iv) and §

3701(a)(1)(ii). The relevant portions of the robbery statute are as follows:

> **(a) Offense defined.-**
>    (1) A person is guilty of robbery if, in the course of committing a theft, he:
> \*\*\*
>       (ii) threatens with or intentionally puts him in fear of immediate serious injury;
> \*\*\*
>       (iv) inflicts bodily injury upon another or threatens another with or intentionally puts him in fear of immediate bodily injury;
> \*\*\*
>       (vi) takes or removes the money of a financial institution without permission of the financial institution by making a demand of an employee of the financial institution orally or in writing with the intent to deprive the financial institution thereof.

[18 Pa.C.S.A. § 3701(a)(1)(ii), (iv), and (vi).]

The Commonwealth argued [that] the additional counts are cognate offenses of the original charges, are supported by the Affidavit of Probable Cause, [allege] no additional elements or conduct ... and there is no unfair surprise [to Appellant.] [Appellant] argue[d] that the amendments include additional elements and conduct which were not alleged in the original [I]nformation and complaint[.] [For instance, Appellant alleged the following additional elements and conduct were included in the amended Information which were not included in the original Information and complaint]:

> (a) threatening or putting another in fear of immediate serious bodily injury and threatening or putting another in fear of bodily injury;
> \*\*\*
> (c) committing the over act "did enter Citizens and Northern Bank" and approach Karen Hall and state "This is a robbery, put all the money in the bag" and brandished a handgun putting her in fear of immediate serious bodily injury.

Defense Answer to Commonwealth's Motion to Amend, [filed 9/30/14.] The Amendment to Information was permitted by

- 22 -

Order of October 23, 2014. Trial took place on November 20, 2014.

*\*\**

[Here, the trial court considered the following factors in] permitting the amendment to the [I]nformation:

(1) The amendments did not change the factual scenario supporting the charges. The Affidavit of Probable Cause set forth the factual scenario: that two occupants were in a Subaru vehicle parked in the parking lot; one occupant exited the vehicle wearing a white ball cap, black gloves, large sunglasses[,] and a dark winter coat while carrying a backpack; he entered the bank building and walked to a teller station and stated "This is a robbery, put all the money in the bag;" he pulled a handgun out with his right hand. [**See**] Affidavit of Probable Cause.

(2) The amendment does not add new facts that were not known to [Appellant]. As set forth in (1) above, the facts were set forth in the Affidavit of Probable Cause. Further, numerous charges in the original [I]nformation allege the brandishing of a handgun and/or threatening or putting another in fear of immediate serious bodily injury. **See** [Original] Information Count 1 Criminal Conspiracy—Robbery, Counts 2 and 3, Criminal Conspiracy—Terroristic Threats; Counts 5 and 6, Criminal Conspiracy—Unlawful Restraint, Counts 7 and 8 Simple Assault; Counts 9 and 10; and Criminal Conspiracy—Recklessly Endangering Another Person.

(3) [Appellant] waived his preliminary hearing. [Appellant] argues that he had a right to a preliminary hearing on these additional charges. However, again, [Appellant] was aware of the factual scenario. Further, [Appellant] executed a plea agreement at the time of the preliminary hearing wherein term #4 stated "If the Defendant does not comply with this agreement, the Commonwealth may amend or add to the charges or take other prosecutorial options." **See** Commonwealth Brief, Exhibit A—Agreement at Preliminary Hearing.

(4) The description of the charges did not change with the amendment. The amended charges were based on Robbery.

- 23 -

(5)    [Appellant] did not argue that [his] defense strategy was required to change after the amendment. The only [reasonable] defenses available for any of the charges would be that [Appellant] did not commit the acts or agreement, that he was unaware of [Talada's] actions, or that he abandoned any conspiracy. [Thus, there was no] change of defense strategy as a result of the amendment.

(6)    The request for amendment allowed for ample notice and preparation time. The Motion to Amend was filed on September 26, 2014. The Amendment was permitted by Order of October 23, 2014. Trial took place on November 20, 2014. [Appellant] did not request a continuance of the trial.

***

Here, although the elements of "threatens or intentionally puts another in fear of bodily injury or serious bodily injury" are separate elements, they are not additional facts. [Appellant] does not cite any prejudice as a result of the amendment. [Appellant] makes only a bald assertion of prejudice in his Response [as follows]: "The amendment at this time causes unfair surprise and prejudices the defendant in that had the more serious allegations been alleged in the complaint, the defendant may have opted to challenge a prima facie case of guilt on those issues." However, the serious allegations of brandishing a gun and placing another in fear of serious bodily injury are set forth in the Affidavit of Probable Cause, the complaint, and the original Information. [Thus,] there was no prejudice to [Appellant] and no error in permitting the amendment to the Information.

Trial Court Opinion, filed 3/11/16, at 12-18.

In the case *sub judice*, based upon our review of the certified record, it is evident that the trial court fully considered the mandates of Pa.R.Crim.P. 564 and its accompanying case law prior to granting the Commonwealth's motion to amend the criminal Information. We find no abuse of discretion

- 24 -

and conclude the trial court acted well within the boundaries of its role in granting the Commonwealth's motion for amendment.

For all of the foregoing reasons, we affirm the judgment of sentence.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/10/2017