J-S10026-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JESSIE DAVIS :
:
Appellant : No. 3387 EDA 2016

Appeal from the Judgment of Sentence September 19, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003341-2014

BEFORE:  BOWES, J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 14, 2018**

Appellant, Jessie Davis, appeals from the judgment of sentence entered on September 19, 2016 in the Criminal Division of the Court of Common Pleas of Philadelphia County.  We affirm.

Briefly stated, the relevant facts and procedural history of this case are as follows.  During the early morning hours of February 16, 2014, Appellant shot two men in the head during gunpoint robberies that took place shortly after the men exited a Chinese restaurant.  Thereafter, on December 22, 2015, Appellant waived his right to a jury and proceeded to a bench trial. After receiving the evidence, the court, on December 23, 2015, found Appellant guilty of two counts each of attempted murder,[1] aggravated

_____

[1] 18 Pa.C.S.A.§§ 901(a) and 2502.

assault,[2] and robbery.[3]  The trial court also found Appellant guilty of one count each of conspiracy to commit murder,[4] possession of a firearm not to be carried without a license,[5] and carrying a firearm on the public streets of Philadelphia.[6]

On July 14, 2016, the court sentenced Appellant to an aggregate term of 25 to 50 years' incarceration.  Appellant subsequently moved for reconsideration of his sentence.[7]  After vacating Appellant's original sentence, the trial court, on September 19, 2016, ordered Appellant to serve 20 to 60 years in prison.  This appeal followed.[8]

_____

[2] 18 Pa.C.S.A.§ 2702(a).

[3] 18 Pa.C.S.A.§ 3701(a)(i).

[4] 18 Pa.C.S.A.§§ 903(a) and 2502.

[5] 18 Pa.C.S.A.§ 6106(a).

[6] 18 Pa.C.S.A.§ 6108.

[7] Appellant's post-sentence motion did not challenge the weight of the evidence.

[8] We shall treat the instant appeal as timely filed pursuant to the prisoner mailbox rule, which holds that an appeal is deemed filed by an incarcerated individual acting *pro se* when it is placed into the hands of prison officials, even if it is actually received by the court after the deadline for filing appeal. **See Commonwealth v. Jones**, 700 A.2d 423, 426 (Pa. 1997).  Here, the record reveals that the trial court imposed Appellant's judgment of sentence on September 19, 2016.  Thus, Appellant had until October 19, 2016 to file his notice of appeal.  **See** Pa.R.A.P. 903(a) (notice of appeal shall be filed within 30 days after the entry of the order from which the appeal is taken). Appellant's *pro se* notice of appeal bears a date stamp indicating that the
*(Footnote Continued Next Page)*

In his brief, Appellant challenges the sufficiency of the evidence underlying his convictions, arguing that his identity as the perpetrator of the instant crimes was not proven beyond a reasonable doubt. In the alternative, Appellant claims that the evidence of his identification was so unreliable that the trial court abused its discretion in concluding that the guilty verdicts were not contrary to the weight of the evidence.

We carefully reviewed the certified record, the pertinent case law, the submissions of the parties, and the opinion of the trial court. Based upon our review, we agree with the court that the evidence was sufficient to demonstrate Appellant's guilt beyond a reasonable doubt. *See* Trial Court Opinion, 4/26/17, at 5-11 (examining Appellant's challenge to the sufficiency of the evidence). Because the court adequately and accurately addressed Appellant's sufficiency challenge, we adopt this aspect of the trial court's opinion as our own. Accordingly, the parties are instructed to attach a copy of the trial court's opinion to all future filings pertaining to our disposition in this appeal.

*(Footnote Continued)* ———————————

clerk's office received it on October 20, 2016. Because the date of receipt is one day after the 30-day appeal deadline, we infer that Appellant placed the notice into the hands of prison authorities no later than October 19, 2016. *See Jones*, 700 A.2d at 426 (Supreme Court "inclined to accept any reasonably verifiable evidence of the date that the prisoner deposits the appeal with the prison authorities"). We further note that, on April 10, 2017, Appellant, through counsel and with leave of this Court, filed an amended notice of appeal to clarify that he sought to challenge the September 19, 2016 judgment of sentence and not the December 23, 2015 guilty verdict.

We also find that Appellant is not entitled to relief based upon his challenge to the weight of the evidence. As a preliminary matter, Appellant waived appellate review of his weight claim because he failed to challenge the weight of the evidence before sentencing or by way of a post-sentence motion. **See** Pa.R.Crim.P. 607(A) ("A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial: (1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or, (3) in a post-sentence motion."); **Commonwealth v. Thompson**, 93 A.3d 478, 490 (Pa. Super. 2014) (failure to properly preserve weight claim in post-sentence motion, by written motion before sentencing, or orally on the record prior to sentencing results in waiver, even if trial court addresses the issue in its opinion), *appeal denied*, 159 A.3d 941 (Pa. 2016); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Even if we were to reach the merits of Appellant's weight claim, we would not find that the trial court abused its discretion in rejecting his contentions. **See** Trial Court Opinion, 4/26/17, at 11-13 (evaluating weight claim and crediting complainants' consistent and confident testimony that Appellant perpetrated the offenses in this case). For each of the foregoing reasons, we conclude that Appellant is not entitled to relief based on the claims raised in this appeal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/14/18

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL SECTION

**FILED**

APR 2 6 2017

Office of Judicial Record
Appeals/Post Trial

Commonwealth of Pennsylvania    :    CP-51-CR-0003341-2014

: 

v. 

: 

Jessie Davis    : 

SUPERIOR COURT
NO. 3387 EDA 2016

CP-51-CR-0003341-2014 Comm. v. Davis, Jessie
Opinion

OPINION

7938616271

Ehrlich, J.

Jessie Davis, hereinafter Appellant, was found guilty of attempted murder, robbery,

aggravated assault, conspiracy, and possession of an instrument of crime following a waiver trial

on December 23, 2015.[1] The charges stem from a robbery and shooting that occurred in North

Philadelphia on February 16, 2014.

Appellant was sentenced on September 19, 2016, to an aggregate term of twenty to sixty

years of incarceration. A timely appeal followed.

On appeal, Appellant avers two points of error:

1. Was the evidence in this matter insufficient to sustain a verdict of guilt on all
   charges (Attempted Murder, Aggravated Assault, Robbery, Criminal
   Conspiracy, Violation of the Uniform Firearm Act §6106, Violation of the
   Uniform Firearm Act §6108, and Possession of an Instrument of Crime)
   where the sole eyewitness's identification testimony was contradictory and
   unreliable (based on the location, design, and placement of the shooter's face
   tattoos), and where otherwise the only identification of the defendant as
   shooter was made based on the color and style of the jacket the defendant was
   wearing?

2. Where the judgment of guilt and judgment of sentence on all offenses
   (Attempted Murder, Aggravated Assault, Robbery, Criminal Conspiracy,

---

[1] 18 Pa.C.S.A. §§ 6106(a)(1), and 6108, respectively.

1

Violation of the Uniform Firearm Act §6106, Violation of the Uniform Firearm Act §6108, and Possession of an Instrument of Crime) against the weight of the evidence, where the sole eyewitness's identification testimony was contradictory and unreliable (based on the location, design, and placement of the shooter's face tattoos), and where otherwise the only identification was made due to the shooter's clothing?

Appellant's Pa.R.A.P. 1925(b) Statement.

As will be discussed below, these claims are without merit. Accordingly, no relief is due.

## The Evidence

On February 16, 2014 at approximately 1:00 a.m., Tomas Albaladejo and Jose Reyes, herein after the complainants, entered a Chinese food takeout restaurant at 3670 Frankford Avenue. Notes of Testimony ("N.T."), 12/22/2015, at 13. Mr. Albaladejo and Mr. Reyes are brothers-in-law. *Id.* While walking into the store, Mr. Albaladejo looked up and saw Appellant. *Id.* at 16. The Chinese store was well lit. *Id.* Mr. Albaladejo stated Appellant had on a green jacket with a hoodie pulled over his head. *Id.* Appellant's face was visible. *Id.* Mr. Albaladejo stated he noticed Appellant because of his unique facial tattoos. *Id.* Appellant has a tattoo depicting a bag of money and a lightning bolt on his forehead. *Id.* at 85. Mr. Albaladejo stated he has never seen anyone with those particular type of tattoos before. *Id.* The Appellant then exited the store. *Id.*

Mr. Reyes cannot read, write or understand the English language, so Mr. Albaladejo helped him order from the menu. *Id.* After about five to ten minutes, Mr. Reyes received his food and the men exited the store. *Id.* at 17. The pair proceeded down Frankford Avenue. *Id.*

Mr. Reyes was walking a foot or two ahead when Mr. Albaladejo heard footsteps running behind them. *Id.* at 23. He turned around and saw two individuals running toward them. *Id.* All of a sudden, Mr. Albaladejo heard a pop and felt a ringing sound in his ear. *Id.* He had been shot in the back of his head behind his ear. *Id.* at 25. His nose and mouth started to bleed. *Id.* at

2

37. He turned and saw Appellant, the same individual he saw in the Chinese restaurant minutes earlier. *Id.* at 26. Appellant had a gun in his hand and was wearing the same green coat he had on in the Chinese restaurant. *Id.* at 27.

Appellant walked over to Mr. Reyes, who was about five feet away from Mr. Albaladejo. *Id.* Appellant told Mr. Reyes, "Give me your wallet." *Id.* at 28. Since Mr. Reyes does not understand English, Mr. Albaladejo translated Appellant's instructions into Spanish. *Id.* Appellant pointed the gun at Mr. Reyes' forehead and said "You think I'm playing?" *Id.* at 29. Mr. Albaladejo told Mr. Reyes to give Appellant his wallet and, "whatever [else] he wanted." *Id.* Mr. Reyes handed Appellant $40 in cash. *Id.* Appellant then shot Mr. Reyes in the back of the head. *Id.* at 31. Appellant then walked back to Mr. Albaladejo who was bent down on one knee. Appellant held the gun two inches from Mr. Albaladejo's forehead and said, "Give me your wallet." *Id.* at 34. Mr. Albaladejo then handed his wallet to the Appellant. *Id.*

A second unidentified man was standing one or two feet away during the incident. *Id.* at 38. During the robbery, the man seemed to be acting as a look-out. *Id.* After Mr. Albaladejo handed over his wallet, the man said "Let's go" and the pair walked in the direction of the Chinese restaurant. *Id.* at 35.

After the assailants fled, Mr. Reyes pulled Mr. Albaladejo to his feet. *Id.* at 36. Mr. Albaladejo held onto Mr. Reyes as the two stumbled to Mr. Albaladejo's mother-in-law's house on Pickwick Street. *Id.* When they arrived, Mr. Reyes called 9-1-1 and police arrived shortly thereafter. *Id.*

At 1:20 a.m. on February 16, 2014, Philadelphia Police Officer Creely, and his partner Officer Mendez, were on routine patrol when they received a report of a shooting that occurred on the 3600 block of Frankford Avenue. N.T. 12/23/15 at 35. As Officer Creely reached

3

Frankford and Castor Avenues, he received another report this one for two males shot at 2070 Pickwick Street. *Id.* at 36. Officer Creely traveled approximately half a city block to reach Pickwick Street. *Id.* He observed blood on the front door of the residence. *Id.* The complainants met him at the door and explained how they had just been shot. *Id.* Mr. Albaladejo told Officer Creely their assailant was a black male, with tattoos on his face, wearing a green coat with a hoodie. *Id.* at 38. They also stated a second male was present but no provided further information. *Id.* The complainants were transported by rescue to Temple University Hospital. *Id.*

Detective Dennis Dusak was assigned to the case on February 16, 2014, to recover the Chinese restaurant's surveillance video. *Id.* at 42. Detectice Dusak interviewed Mr. Albaladejo on February 19, 2014 and showed him still photos from the February 16, 2014 surveillance video. He asked Mr. Albaladejo if he recognized the man in the still photos as the individual who shot him that night. *Id.* at 46. Mr. Albaladejo said, "Yes...that is the person I described." *Id.* at 47.

Based on this information, Detective Dusak developed a photo of the suspect and researched his name, address and other identifying information. *Id.* The male was identified as Appellant, Jesse Davis, from 3710 Frankford Avenue. This address is five houses away from the Chinese restaurant. *Id.* Detective Dusak then compiled a photo array of seven similar looking males to present to each complainant. *Id.* at 51. Detective Dusak stated he did not relay to the complainants any information regarding the individuals in the photo array. *Id.* Once presented the array, Mr. Albaladejo picked out the Appellant. *Id.* In fact, Mr. Albaladejo stated he was "one hundred percent sure this is the person." *Id.* at 53.

4

Detective Daniel Murawski also presided over the shooting investigation. *Id.* at 71. At 3638 Castor Avenue, he recovered one live round with blood on it, one fired cartridge casing, and another fired cartridge casing next to a brick wall. *Id.* at 76. The casings and live round were found in the same general area, about three feet apart. *Id.* Castor Avenue is two blocks away from where the shooting occurred. *Id.*

Ballistic results were stipulated to between counsel. *Id.* Testing established four items were recovered: one live round and three fire cartridge casings. *Id.* at 80. Microscopic examinations determined fired cartridge casing one and fired cartridge casing two came from the same gun. *Id.* No microscopic markings would permit firearm identification for the live round. However, Detective Daniel Murawski stated "there is evidence all rounds originated from a .25 caliber firearm." *Id.* In addition, it was stipulated between counsel that Appellant did not have a proper license and was ineligible to carry a weapon on the date in question. *Id.*

## Discussion

### *Sufficiency of the Evidence*

Appellant contends on appeal that the evidence was insufficient to sustain his convictions for attempted murder, robbery, aggravated assault, conspiracy, and possession of an instrument of crime.

The standard of review by which a reviewing court must assess the sufficiency of the evidence is well-settled. "When reviewing a challenge to the sufficiency of the evidence, we must regard all the evidence in the light most favorable to the verdict winner, giving that party the benefit of all reasonable inferences." *Commonwealth v. Bedford*, 50 A.3d 707, 711 (Pa. Super. 2012) (internal citations omitted). In addition:

> "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt

5

may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence."

*Commonwealth v. Nypaver*, 69 A.2d 708, 714 (Pa. Super. 2013) (citations omitted).

A person may be convicted of attempted murder "if he takes a substantial step toward the commission of a killing, with the specific intent in mind to commit such an act." *Commonwealth v. Hobson*, 604 A.2d 717, 719 (Pa. Super. 1992). "The intent which is a prerequisite to a finding of murder is 'malice aforethought' or simply, malice." *Id.* at 719-720. Malice is synonymous with either a wickedness of disposition, cruelty, recklessness of consequences, indicating unjustified disregard for the probability of death or great bodily harm. *Id.* at 720. A fact-finder can properly infer malice from the use of a deadly weapon on a vital part of the complainant's body. *Commonwealth v. Siebert*, 622 A.2d 361, 364 (Pa. Super. 1993).

Viewing the evidence in a light most favorable to the Commonwealth as verdict winner, Mr. Reyes testified to watching the Appellant point a small automatic handgun, at close range, at Mr. Albaladejo's head and pull the trigger. The bullet hit Mr. Albaladejo in the neck and exited through the nose breaking his nasal bone. Soon after, Appellant fired a shot in the back of Mr. Reyes' head. These actions qualify as substantial steps in the commission of a killing. The intent requirement for attempted murder is also satisfied because the Appellant used a deadly weapon (a firearm) on perhaps the most vital part of the complainants' body (the head). *Seibert, supra.*

6

In the instant case, Mr. Albaladejo testified to the following on direct examination by the district attorney:

EDGAR JARAMILLO: What was Mr. Davis doing? What was he doing with the gun with your brother-in-law? What was he saying to your brother-in-law?

TOMAS ALBALADEJO: He said, "Give me your wallet." He touched the gun back and said "You think I'm playing?"

EDGAR JARAMILLO: What did you say to help your brother-in-law?

TOMAS ALBALADEJO: I told him to do what [the defendant] says, to come down. And so he bent down to his knees. And when he gave him his wallet, he shot him.

EDGAR JARAMILLO: When you were talking to your brother-in-law and you were telling your brother-in-law to kneel...to give his wallet...did the defendant look at you?

TOMAS ALBALADEJO: Yeah...after he shot him, he came toward me and he was like, "Give me your wallet," and put the gun to my head.

EDGAR JARAMILLO: Was he in front of you when he put the gun up to your head?

TOMAS ALBALADEJO: Yes.

N.T., 12/22/2015 at 29-33.

The above testimony more than adequately demonstrates Appellant's intent to murder the complainants and the substantial steps he took toward the accomplishment of that objective. The physical demeanor of the Appellant, threatening language and use of a deadly weapon on a vital part of the body all exhibit an intent to inflict deadly harm on the complainants. In addition,

7

Detective Daniel Murawski recovered one live round with blood on it and two fired cartridge casings at 3638 Castor Avenue.

There was also no testimony presented that conflicted with the eyewitnesses' above testimony. Therefore, the evidence presented by the Commonwealth was sufficient for the jury to convict Appellant of attempted murder.

The relevant portions of the robbery statute are as follows:

§ 3701. Robbery

Offense defined.—

> (1) A person is guilty of robbery if, in the course of committing a theft, he:
>
> \* \* \*
>
> > (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

18 Pa. C.S.A. § 3701.

Similarly, Appellant argues that the evidence was insufficient to convict him of robbery. In the instant case, Mr. Albaladejo and Mr. Reyes were approached by Appellant, forced to their knees, and held at gunpoint until their belongings were taken. Appellant told each complainant, "Give me your wallet...touched the gun back" and said "You think I'm playing?" This is sufficient to find the complainants' belongings were taken by force. The evidence shows Appellant threatened to kill Mr. Albaladejo and Mr. Reyes. These facts establish all the elements of robbery. Therefore, the evidence presented by the Commonwealth was sufficient for the jury to convict Appellant of robbery.

Likewise, the Commonwealth's evidence establishing aggravated assault was equally adequate. Under Pennsylvania law, a person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or

8

recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa. C.S. § 2702 (a)(1). Where the victim suffers serious bodily injury, the Commonwealth is not required to prove specific intent. *Commonwealth v. Patrick*, 933 A.2d 1043, 1046 (Pa. Super. 2007)

> The Commonwealth need only prove [the defendant] acted recklessly under the circumstances manifesting an extreme indifference to the value of human life. For the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that injury or death will ensue.

*Commonwealth v. Patrick*, 933 A.2d 1043, 1046 (Pa. Super. 2007) (quoting *Commonwealth v. Nichols*, 692 A.2d 181, 185 (Pa. Super. 1997) (internal citations omitted)).

The elements of aggravated assault are necessarily included in the offense of attempted murder and merge with it for sentencing purposes. Indeed, every element of aggravated assault is subsumed in the elements of attempted murder. *Commonwealth v. Anderson*, 650 A.2d 20, 24 (Pa. 1994) *decision modified on denial of reargument*, 653 A.2d 615 (Pa. 1994) (amending the court's previous order to include vacating the judgment of sentence for attempted murder and possession of an instrument of crime in addition to aggravated assault, and remanding for resentencing); *See* 18 Pa.C.S. §2301 and 2702(a)(1). Because the fact-finder determined that there was sufficient evidence to conclude that each element of the offense of attempted murder was satisfied beyond a reasonable doubt, it follows that each element of the offense of aggravated assault is also satisfied. Thus, the Appellant's claim regarding the insufficiency of evidence for aggravated assault must fail.

Furthermore, the Commonwealth's evidence establishing criminal conspiracy was equally adequate. The relevant portions of the criminal conspiracy statute are as follows:

§ 903. Criminal Conspiracy

9

(a) Definition of conspiracy. – A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) Agrees with such other person or persons that they or one of more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) Agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa. C.S. § 903.

[T]o sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant: (1) entered into an agreement to commit or aid in the unlawful act with another person or persons, (2) with a shared criminal intent, and (3) an overt act was done in furtherance of the conspiracy.

*Commonwealth v. Murphy*, 795 A.3d 1025, 1037 (Pa. Super. 2002).

Furthermore, "[w]hile the Commonwealth is not required to prove a written or express agreement, a tactic agreement must be established by reasonable inferences arising from the facts and circumstances." *Commonwealth v. Savage*, 566 A.2d 272, 276 (Pa. Super. 1989). Therefore, an agreement may be inferred between co-conspirators from the facts of the case.

The Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that an overt agreement to rob the two victims was formed between the Appellant and the unidentified accomplice. In the instant case, Appellant and the second male approached the complainants on Castor Avenue. As Mr. Albaladejo testified, this man appeared to be acting as a look-out. While the Appellant held a gun to each complainant's head and demanded their belongings, the individual stood close by. After the Appellant confiscated Mr. Albaladejo's wallet, the second male said "Let's go" and the pair walked away together. The facts and circumstances and specifically, the ongoing conduct of the assailants, clearly established a conspiratorial agreement between Appellant and the other individual on scene. Therefore, the evidence was sufficient to convict Appellant of criminal conspiracy.

10

The relevant portion of the possessing an instrument of crime statute is as follows:

§ 907. Possessing an instrument of crime

(a) Criminal instruments generally – A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

18 Pa.C.S.A. § 907.

Under this provision, the Commonwealth must prove two elements: (1) possession of an object that is a weapon; and (2) intent to use that weapon for a criminal purpose. *In re A.C.*, 763 A.2d 889, 890-91 (Pa. Super. 2000) (citing *Commonwealth v. Hardick*, 380 A.2d 1235, 1236 (Pa. 1977). It is well established that a loaded firearm is a weapon, so only the question of criminal intent is at issue and easily resolved. *See Commonwealth v. Harley*, 418 A.2d 1354, 1357 (Pa. Super. 1980). Appellant's criminal intent was made manifest when he held a gun two inches away from Mr. Albaladejo's head and Mr. Reyes' head and demanded their property. As such, the evidence is sufficient to convict Appellant of possessing an instrument of crime.

### Weight of the Evidence

Appellant next contends that the verdict was against the weight of the evidence. This claim should fail because the standard of review for evaluating a weight-of-the-evidence claim is well established and very narrow. *Commonwealth v. Champney*, 832 A.2d 403, 407 (Pa. 2003). Determining the weight of the evidence is reserved exclusively for the finder of fact. *Id.* at 408. Again, the finder of fact is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Id.* Thus, an appellate court can only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice. *Id. See also Commonwealth v. Johnson*, 668 A.2d 97, 101 (Pa. 1995). Because the trial judge is in the best position to view the evidence presented, an appellate court will give that judge the utmost

11

consideration when reviewing the court's determination on whether the verdict is against the weight of the evidence. *Commonwealth v. Morgan*, 913 A.2d 906 (Pa. Super. 2006).

A "true weight-of-the-evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Charlton*, 902 A.2d 554, 561 (Pa. Super. 2006). Moreover, a new trial should not be granted in a criminal prosecution because of a mere conflict in the testimony or because the judge, on the same facts, may have arrived at a different conclusion. *Commonwealth v. Widmer*, 744 A.2d 745, 752 (Pa. 2000).

To be against the weight of the evidence, the verdict must shock one's sense of justice or be an abuse of discretion by the trial court. *Id.* As described *supra*, the evidence presented at trial was sufficient to support a conviction for attempted murder, robbery, aggravated assault, conspiracy and possessing an instrument of crime. With that analysis in mind, one must consider whether the verdict in this case shocks one's sense of justice or represents an abuse of discretion. *Id.* Given the strength and consistency of the testimony presented by the Commonwealth's witnesses, it does neither. *Id.*

In the instant case, the court chose to credit the testimony of the complainants, the police officer and detectives investigating the case. The evidence found credible by the court was clearly presented. It showed the complainant observed Appellant in the Chinese restaurant minutes before Appellant robbed the two men. Mr. Albaladejo immediately recognized Appellant, when he approached the complainants on Frankford Avenue, due to his unique tattoos and green coat. Mr. Albaladejo positively identified Appellant when he was shown a photo array by Detective Dusak. He stated he was "one hundred present sure" Appellant was the individual

who shot and robbed the pair when he saw his photo. He also positively identified Appellant at trial.

Furthermore, Mr. Albaladejo and Mr. Reyes' testimony was consistent throughout the police investigation and at trial, notwithstanding Mr. Reyes' language barrier. The court had the opportunity to observe any claimed inconsistencies in the witnesses' testimony. The fact that the Appellant was found guilty after all the evidence was presented was not contrary to the evidence or shocking to the conscious. As stated, determining a weight of the evidence claim is reserved exclusively for the fact-finder and should not be disturbed absent an abuse of discretion. No abuse of discretion occurred in the instant case.

For the foregoing reasons, Appellant's claim that the verdict was against the weight of the evidence must also fail.

13

## Conclusion

In summary, this court has carefully reviewed the entire record and finds no harmful, prejudicial, or reversible error and nothing to justify the granting of Appellant's request for relief. For the reasons set forth above, the judgment of the trial court should be affirmed.

_____

J.